**Bruce N. MASORS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.**

No. 90–540.

United States Court of Veterans Appeals.

Submitted Feb. 20, 1991.

Decided Feb. 7, 1992.

William G. Smith, Los Angeles, Cal., was on the pleadings, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The veteran, Bruce N. Masors, appeals an April 3, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying his claims for service connection for his current psychiatric disorders and for non-service-connected pension. We find that the Veterans' Administration (now the Department of Veterans Affairs) (VA) breached its statutory duty to assist the veteran because it failed to try to obtain psychiatric examination reports and Social Security records that the record on appeal clearly indicated were pertinent to the veteran's pension claim. Furthermore, the Board failed to provide an adequate statement of reasons or bases for its implicit rejection of the veteran's evidence on that claim. Accordingly, we retain jurisdiction and remand the record to the Board with instructions that VA fulfill its duty to assist by obtaining the relevant records on that claim, and that the BVA promptly readjudicate the pension claim and provide an adequate statement of reasons or bases regarding its evaluation of the veteran's evidence on that claim. We affirm the Board's denial of the service-connected compensation claim.

## I. BACKGROUND

The veteran served on active duty in the U.S. Air Force from February 1972 to July 1974. R. at 1. His service medical records

indicate that in June and July 1973 he was treated for depression, which was diagnosed as "minor" and "mild". R. at 19, 20. On his separation examination form, the veteran indicated that he had suffered from "depression or excessive worry" and "nervous trouble". R. at 26. On the same form, the examining physician stated: "Depression and nervous trouble refer to personal problems, treated in mental health clinic, No Comp., No Seq." R. at 27, 29.

The first indication in the record of a post-service diagnosis of psychiatric problems is in October 1982, when the veteran requested consultation with a VA psychiatrist for purposes of being referred to vocational counseling. The VA psychologist noted that the veteran had been seeing a therapist regularly since December 1981. Supp.R. at 61. The examination report also indicated that the veteran had trouble keeping jobs and that the longest he had held a job since service was 6 months. Supp.R. at 61. The psychiatrist reported an impression of "marked personality disorder" and recommended admission of the veteran to the VA day treatment clinic (DTC). Supp.R. at 61–62.

The veteran was admitted to the DTC in November 1982. The admission report, dated November 26, 1982, contains a diagnosis of "Histrionic Personality Disorder", and states that the "highest level of adaptive func[t]ions [in the] past year.... [has been] poor.... [and he is u]nable to maintain employment." Supp.R. at 65. However, the report also noted that the veteran was "in general pleasant in conversation" and "was oriented X3". Supp.R. at 65. He was discharged from the program on December 13, 1982, for failure to attend. Supp.R. at 68.

In March 1983, the veteran was seen by a VA vocational rehabilitation counselor, who found that "Mr. Masors has had significant vocational maladjustment in his life" and "[h]is noncompliance with recommended treatment and inability to maintain interest in most anything indicates very poor prognosis for vocational changes in the future." Supp.R. at 73. Upon subsequent testing, the counselor concluded that

"[h]e is a bright, intellectually capable individual who for personality reasons is unable to adapt to the vocational sphere. He is not seen as a candidate for further vocational rehabilitation services at this time due to the severity of his psychological problems." Supp.R. at 74. In 1983 a private psychiatrist at the Long Beach Mental Health Center examined the veteran and concluded that "although patient has aspects of many of the personality disorders, the ones that stand out are: .... antisocial personality disorder.... [and] schizotypical personality disorder", and that "the probabilities are great that he will continue to have difficulty in maintaining regular employment." Supp.R. at 92.

In June 1983 the Social Security Administration (SSA) found the veteran to be unemployable by reason of his psychiatric disability and entitled to Social Security disability insurance (SSDI). Supp.R. 95–100. According to the SSA decision, a psychiatrist who had examined the veteran for purposes of Social Security benefits had found him to be "permanently unemployable". Supp.R. at 94. The SSA administrative law judge (A.L.J.) made specific findings of fact that the veteran could not relate appropriately to others in even minimal contact, was unable to perform any of the jobs he had held in the past, had no skills that were transferable to other work, and could not be expected to make a vocational adjustment to jobs which exist in substantial numbers in the national economy. Supp.R. at 99–100.

The veteran first filed for VA benefits for his psychiatric disorder in November 1982, claiming, among other things, that he was "unable to hold [a] job over [the] long term—lost 13 recently". R. at 31. The VA Regional Office (RO) apparently denied the claim. The veteran appealed to the BVA, and in a decision dated May 13, 1985, the BVA denied both "service connection for a psychiatric disorder" and "a permanent and total disability rating for pension purposes." R. at 34.

With regard to service connection, the BVA stated that under VA "regulations a personality disorder, which is in the nature

of a developmental disorder, is not a disease for compensation purposes." The Board then found that "the emotional problems experienced by the veteran during service were characteristic of a personality disorder, and it is clear from the post-service medical records that the veteran's psychiatric disorder is a personality disorder." R. at 37.

On the pension claim, the Board stated that "in view of the veteran's relatively young age and college education, we are of the opinion that there are several types of jobs which he is capable of performing and which do not involve prolonged contact with other people." R. at 38. The Board considered the fact that the SSA had found the veteran totally disabled, but stated that the SSA and the VA "use different criteria in determining disability".

The veteran sought to reopen his claim in February 1989. He stated that he was submitting new evidence consisting of Social Security records demonstrating that he had been totally and continuously disabled since 1981. However, those documents are not found in the record on appeal. On his VA medical examination form, the veteran indicated that he had "seen [a] psychologist for several years in individual therapy" for "schizophreniform disease", and gave the psychologist's name (John Milden) and address. R. at 41.

The veteran was given a VA examination for disability evaluation in June and July 1989. On the psychiatric evaluation, the examiner diagnosed "Dysthymic disorder" and "mixed personality disorder with passive aggressive, antisocial, schizoid and borderline traits." R. at 47. The examiner concluded that "[t]he veteran continues to suffer from his disorders and appears to be quite disturbed. Nevertheless, he is bright, insightful and has potential". R. at 47.

In an August 30, 1989 rating decision, the RO denied the veteran's claims, stating:

Cited VA [examination report] shows the veteran has a dysthmic disorder with mixed personality disorder but does not provide new & material evidence to warrant a change in prior denial of SC for nervous condition. His disability is not so severe as to preclude gainful employment. . . .

R. at 51.

The veteran appealed to the BVA, which denied his claims for service connection and for pension based on unemployability. *Bruce N. Masors*, BVA 90–07909 (hereinafter *Masors*) (Apr. 3, 1990). A timely appeal to this Court followed under 38 U.S.C. §§ 7252(a) and 7266 (formerly §§ 4052 and 4066).

## II. ANALYSIS

We note at the outset that the BVA applied different standards of review as to the two issues in this case. The Board denied the veteran's claim for service connection of his psychiatric disorder because "the **evidence received since the prior Board determination** is insufficient to establish the presence of an acquired psychiatric disability attributable to military service." *Masors*, at 5 (emphasis added). In denying the claim for unemployability for pension benefits, the Board stated that "**when considering the entire record,** the Board is not persuaded that the veteran is precluded from engaging in all forms of substantially gainful employment." *Masors*, at 6 (emphasis added). It is clear that the BVA decision as to service connection was based on review only of the new evidence, consisting of the July 1989 VA examination, whereas the decision as to pension eligibility is based upon the entire record.

### A. Service Connection

"[W]hen a claim is disallowed by the Board, the claim [generally] may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b) (formerly § 4004). The exception to this rule is 38 U.S.C. § 5108 (formerly § 3008), which states:

If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

When a claim is reopened under section 5108, the BVA must then "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). Therefore, when a veteran seeks to reopen his or her claim under section 5108, the BVA must conduct a two-step analysis. First, the Board must determine whether the evidence submitted since the previous BVA decision is "new and material". Second, if the evidence is found to be new and material, the claim is to be reopened and the Board must then "assess the new and material evidence in the context of the other evidence of record and make new factual determinations." *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *Jones v. Derwinski*, 1 Vet.App. 210, 215 (1991).

 The BVA, in its April 3, 1990, decision, failed to conduct this two-step analysis. Instead, in deciding the service-connection issue, the Board determined that the new evidence did not "demonstrate that the veteran acquired a psychiatric disorder which originated or became worse in service." *Masors* at 7. It is not clear whether the Board made any determination as to whether the new evidence was "material" for purposes of reopening the claim. In its discussion of the new evidence in relation to the claim for service connection, the Board stated:

> Additional evidence, which consists of a VA psychiatric examination, shows that the veteran continues to suffer from a personality disorder, and also has a dysthymic disorder. But the evidence does not show that the dysthymic disorder began in service. In sum, we find that the evidence received since the prior Board determination is insufficient to establish the presence of an acquired psychiatric disability attributable to military service.

*Masors* at 7. This language might suggest a finding that the new evidence is not material to the issue of service connection. However, it could also suggest that the Board proceeded to decide the merits of the issue of service connection without making any finding as to whether the new evidence was material and would justify reopening.

The Board is required by 38 U.S.C. § 7104(d)(1) to provide "a written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions". Since the Board's decision did not contain any written conclusion that the evidence was not material to the claim for service connection, we are unable to conclude that the ambiguous language in the Board's discussion represented such a finding. Rather, the absence of any stated conclusions as to whether the evidence is new and material compels us to find that the Board failed to conduct the requisite analysis as to whether the evidence was new and material. Thus, the Board committed error under the first prong of the two-step *Manio* reopening analysis by failing to consider whether there was new and material evidence to reopen the claim for service connection. We further note that, if the new evidence was "material" as a matter of law, there would be error under the second prong of the *Manio* analysis in the Board's failure to decide the issue of service connection based upon all the evidence, both old and new. *See Smith v. Derwinski*, 1 Vet.App. 235, 237 (1991); *Jones*, 1 Vet.App. at 214–15; *Manio*, 1 Vet.App. at 145.

 Although we find that the BVA erred in failing to apply the first prong of the two-step *Manio* test prior to reopening the veteran's previously disallowed claim for service connection under section 5108, remand for application of the proper test is not necessary. Whether or not evidence submitted to reopen a previously disallowed claim is "new and material" is a question of law which we review *de novo* under 38 U.S.C. § 7261(a)(1) (formerly § 4061). *See Jones*, 1 Vet.App. at 213; *Smith v. Derwinski*, 1 Vet.App. 178, 180 (1991); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). As explained below, we hold that the veteran in the present case has not submitted any new evidence material to the issue of service connection for his psychiatric disorder and, therefore, there is no basis for reopening his compensation claim under section 5108.

New evidence is evidence that is not "merely cumulative of other evidence of record". *Colvin*, 1 Vet.App. at 174; *see also Smith*, 1 Vet.App. at 237; 38 C.F.R. § 3.156(c). Evidence is material if there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Godwin*, 1 Vet.App. at 424; *Colvin*, 1 Vet.App. at 174; *see also Smith*, 1 Vet.App. at 237.

In the present case, the only new evidence before the Board in its 1990 decision apparently was the reports of the VA compensation and pension examination from June and July 1989. R. at 46–47. There is nothing in these documents suggesting a link between the appellant's present psychiatric condition and his in-service personality disorders. In his submissions to this Court, the appellant does not assert that these VA medical reports establish such a link. It is apparent that no evidence which is both new and material regarding the issue of service connection of the appellant's psychiatric condition was submitted to justify reopening of the compensation claim. Therefore, we hold that any error that may have occurred during the BVA's review of the previously disallowed claim that it purported to reopen is harmless error as to the claim of service connection. *See* 38 U.S.C. § 7261(b); *Godwin*, 1 Vet. App. at 425; *Thompson v. Derwinski*, 1 Vet.App. 251, 253–54 (1991).

However, our finding that the BVA's failure to apply the two-part test for reopened claims was harmless error is subject to this caveat. As we conclude in part B.1., below, the BVA here had a duty to help the veteran obtain certain records relevant to his claim. If these records contain evidence relating to the issue of service connection, then the BVA will be required to apply the two-part test, and provide a statement of its conclusions, with reasons and bases therefor, as to the compensation claim.

## B. Pension

With regard to the issue of unemployability for pension purposes, the Board noted that it was "considering the entire record". *Masors* at 6. As we held in *Bagby v. Derwinski*, 1 Vet.App. 225, 226 (1991), in such a case, where the BVA " 'review[ed] the evidence of record in its entirety' ", the Court "therefore review[s] appellant's claim based upon the entire record." In the present case, we find that the BVA failed to discharge its duty to assist the veteran as to his pension claim by seeking to obtain records which the record indicates are pertinent, and also failed to provide an adequate statement of reasons or bases for its evaluation of relevant evidence in the record.

### 1.

When a veteran has satisfied his or her initial burden of submitting a well-grounded claim, VA has an affirmative duty to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007). "A well-grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a)]." *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991) (quoting *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990)). In the present case, the veteran submitted a well-grounded claim of unemployability for pension purposes. In his February 1989 statement in support of his claim, the veteran stated that, since 1983, he had been continuously rated as permanently and totally disabled by the SSA retroactive to 1981. R. at 40. Additionally, the veteran previously had submitted private medical records in which the examining psychiatrist concluded that "[t]he probabilities are great that he will continue to have difficulty in maintaining regular employment" (Supp.R. at 92), and the report of a VA rehabilitation counselor who concluded that there was a "very poor prognosis for vocational change in the future." Supp.R. at 73. Consequently, VA and the BVA were under a duty to assist the veteran in developing the facts pertinent to his unemployability claim for pension purposes.

The duty to assist in this case required the BVA to seek to obtain private

medical records of the veteran's treatment for his psychiatric disorder and records of the SSA regarding the veteran's continuing rating of unemployability for Social Security purposes.

On his July 1989 Report of Medical Examination for Disability Evaluation, the veteran indicated that he had been treated from 1982 to 1986 for his "schizophreniform disorder" by a private psychotherapist, John Milden, who was apparently trained as a social worker and had a Master's degree in social work. R. at 41. In his examination report, the examining VA physician noted that the veteran had received private treatment from Mr. Milden. R. at 46. The records of this private treatment are not found in the record on appeal, nor is there any evidence that the BVA ever attempted to obtain them. In his opposition to the appellant's motion for summary disposition, and his own motion for summary affirmance and stay of proceedings, the Secretary asserts that the private psychological reports from Mr. Milden "were directly before the BVA when it rendered [its 1985] decision." Motion of Appellee at 3. However, the documents in the record on appeal which the Secretary cites to support this proposition are not treatment records. The cited documents consist of the record of the 1983 SSA decision rating the veteran unemployable, which made reference to an August 1982 report from Mr. Milden (Supp.R. at 98), and a form, dated September 24, 1984, and signed by Mr. Milden, certifying that the veteran was eligible to participate in a California housing assistance program for disabled persons because he suffered from "schizophreniform disorder". Supp.R. at 107–108. These documents do not demonstrate, as the Secretary asserts, that reports of the veteran's treatment by Mr. Milden were before the BVA in 1985. Furthermore, there is no evidence that any such records were sought or obtained by VA prior to the BVA's most recent decision.

■ The observations and opinions of a treating psychotherapist, based upon several years of treatment, are certainly perti-

nent to the veteran's claim of unemployability due to his psychiatric disorder. The BVA's duty to assist includes the duty to seek to obtain private medical records. *See Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990); *Murphy*, 1 Vet.App. at 82. In the present case, therefore, the BVA should have either requested the veteran to submit the private records or obtained the veteran's written release and then requested the records directly from the treating psychotherapist. *See Murphy*, 1 Vet.App. at 82.

■ The Board also breached its duty to assist by failing to make efforts to obtain records from the SSA regarding the veteran's unemployability rating. The record on appeal reveals that in both its 1985 and 1990 decisions, the BVA had before it the record of the 1983 SSA decision rating the veteran unemployable for SSDI purposes. S.R. at 95. However, the BVA apparently did not attempt to obtain Social Security records relating to the veteran's condition since that time.

In his February 1989 statement in support of his reopened claim, the veteran stated that he was enclosing new evidence from the SSA showing that his total disability had continued from 1981 to the present. Those documents are not found in the record. Any records that the SSA has pertaining to its continuing rating of his unemployability would certainly be pertinent to his claim of unemployability for VA pension purposes. *See Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991); *Ferraro v. Derwinski*, 1 Vet.App. 326, 332 (1991). In its April 1990 decision, the BVA stated that the SSA rating of unemployability is not controlling because "each Federal agency must make a determination of the effect of disabilities in any individual case based on its own regulatory criteria." *Masors* at 6; *cf.* 38 U.S.C. § 7104(c) ("The Board shall be bound in its decisions by the regulations of [VA]"); 38 C.F.R. § 3.101 (1991) ("All decisions will conform to the statutes and regulations of the Department of Veterans Affairs"); *Collier*, 1 Vet.App. at 332 (noting that there are "significant differences" in the definition of disability under the stat-

utes and regulations governing SSA adjudications, on the one hand, and those governing VA adjudications, on the other). Although the SSA decision is certainly not controlling, that agency's determinations regarding the veteran's unemployability, and the reasons for those determinations, are certainly highly pertinent to the present claim. *See Collier; Ferraro.*

It is clear that the SSA records may contain evidence which was not previously before the BVA and which is pertinent to the veteran's claim of unemployability. For example, the 1983 SSA decision makes reference to a report from Mr. Milden, the veteran's treating psychotherapist, whereas no reports from Mr. Milden were apparently before the BVA in connection with either its 1985 or 1990 decision. Hence, the BVA's duty to assist the claimant required it to request records relating to the SSA unemployability rating that were not previously before the BVA. Under 38 U.S.C. § 5106 (formerly § 3006), the SSA, as is any other federal department or agency, is directed to "provide such information to the Secretary as the Secretary may request for purposes of determining eligibility for or amount of benefits, or verifying other information with respect thereto." Moreover, 38 U.S.C. § 5107(a) specifically states that VA's duty to assist includes requesting information from other federal departments or agencies as described in section 5106. *See Murphy,* 1 Vet.App. at 82; *Littke,* 1 Vet.App. at 91.

The record on appeal indicates that the only SSA record before the BVA in April 1990 was a copy of the 1983 decision rating the veteran unemployable for SSDI purposes. On remand, therefore, the BVA should seek to obtain any SSA records relating to the veteran's unemployability subsequent to the 1983 SSA decision making him eligible for SSDI.

2.

■■■■■ Upon remand the Board will be required to assist the veteran in obtaining both private and governmental records pertinent to his pension claim. As a consequence of the new evidence, the Board will then be required to readjudicate the veter-

an's unemployability and provide reasons and bases for its conclusions. *See* 38 U.S.C. § 7104(d)(1); *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification of the decision" and is not "merely for the purposes of rewriting the opinion so it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1)".); *Sammarco v. Derwinski,* 1 Vet.App. 111, 112–14 (1991); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). The statement of reasons or bases must be sufficient to "enable a claimant to understand, not only the Board's decision but also the precise basis for that decision" as well as to facilitate review by this Court. *Gilbert,* 1 Vet.App. at 56. In denying claims of unemployability, the BVA must provide reasons or bases for a conclusion that the veteran is not precluded from pursuing substantially gainful employment. *See Collier,* 1 Vet.App. at 416–17; *Hyder v. Derwinski,* 1 Vet.App. 221, 224 (1991); *Hatlestad v. Derwinski,* 1 Vet.App. 164, 169–70 (1991). The conclusory statement that "the Board is not persuaded that the veteran is precluded from engaging in all forms of substantially gainful employment consistent with his relatively young age, college education and work experience" is not sufficient for that purpose. *See Hyder,* 1 Vet.App. at 224.

In the present case, the veteran submitted evidence that he has been found unemployable by the SSA in 1983. Although the Board is required to make its own determination as to unemployability, "at a minimum.... the decision of the A.L.J. in this case is evidence which cannot be ignored and to the extent its conclusions are not accepted, reasons or bases should be given therefor." *Collier,* 1 Vet.App. at 417. The Board has failed to give adequate explanatory reasons or bases for rejecting the factual findings of the A.L.J., which were evidence of record in this case. Specifically, the BVA failed to provide reasons or bases for its implicit rejection of the following findings made by the A.L.J.:

6. The claimant is unable to perform his past relevant work as a casual laborer, electronics technician, avionics

technician, sales clerk, factory laborer, and television repairman....

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work....

10. Considering the types of work which the claimant is still functionally capable of performing in combination with his age, education and work experience, he cannot be expected to make a vocational adjustment to work which exists in significant numbers in the national economy.

Supp.R. at 99–100. The BVA, in its 1990 decision, concluded that "the veteran's psychiatric disability would limit his employment opportunities, but would not prevent all types of substantially gainful employment." *Masors* at 6. In light of the evidence of record that the veteran was, according to the 1983 SSA decision (Supp.R. 99), "unable to perform his past relevant work", did not have skills transferable to other work, and could not make a vocational adjustment to jobs existing in significant numbers in the national economy, the BVA has not provided adequate reasons or bases for concluding that the veteran was capable of pursuing substantially gainful employment. *See Collier*, 1 Vet.App. at 416–17. In this connection, the Court notes that SSDI ratings are subject to periodic reevaluation based on periodic reexaminations. *See* 42 U.S.C. § 421(i)(1).

In order to provide an adequate statement of reasons or bases, the BVA will have to provide reasons or bases either for rejecting the A.L.J.'s findings or for concluding that those findings are not inconsistent with the BVA's conclusion that the veteran was not precluded from pursuing substantially gainful employment. *See Gleicher v. Derwinski*, 2 Vet.App. 26, 28–29 (1991).

## III. CONCLUSION

On the basis of the foregoing analysis finding multiple errors in the BVA's April 1990 decision, the Court retains jurisdiction and the BVA decision will be affirmed in part and the record will be remanded in part.

The BVA erroneously failed to apply the two-part *Manio* test in determining whether to reopen the veteran's claim for service connection of his psychiatric disorder. However, because we conclude as a matter of law that the veteran did not submit new and material evidence of service connection sufficient to reopen that claim under 38 U.S.C. § 5108, this was harmless error and the BVA decision will be affirmed on that issue. If, however, new evidence relating to this claim is obtained by the Board in the remand on the veteran's pension claim, the Board will be required to apply the two-part test with respect to the potential for readjudication of the service-connection claim as well.

The BVA considered the veteran's claim for non-service-connected pension for unemployability on the basis of the entire record, and our review is on the same basis. The BVA breached its duty to assist the veteran by obtaining relevant private and governmental records. Furthermore, it failed to provide an adequate statement of reasons or bases for its conclusions regarding the veteran's unemployability. Accordingly, this matter will be remanded to the BVA, the Court retaining jurisdiction, for fulfillment of these statutory duties and for a prompt, full readjudication of the pension claim. *See Fletcher*, 1 Vet.App. at 397. On remand, the Board shall assist the veteran in obtaining records of his treatment from John Milden at the Long Beach Mental Health Center, and records from the SSA relating to the veteran's rating of unemployability for SSDI purposes. Furthermore, the Board shall provide in its decision an adequate statement of reasons or bases for its conclusions, including "an analysis of the credibility or probative value of the evidence submitted by.... the veteran in support of his claim, [or] a statement of the reasons or bases for the implicit rejection of this evidence by the Board." *Gilbert*, 1 Vet.App. at 59. Specifically, if the Board continues its denial of the veteran's claim, the Board must provide reasons or bases for its implicit rejection of the findings of the SSA administrative law

judge with respect to the veteran's unemployability. The Secretary shall file with the Clerk and serve upon the appellant a copy of the Board's rating decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

AFFIRMED IN PART AND REMANDED IN PART.

Before FARLEY, HOLDAWAY and IVERS, Associate Judges.