**Charles R. BLACKBURN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–1037.**

United States Court of Veterans Appeals.

Decided July 31, 1995.

Stephen Shellnutt was on the pleadings for appellant.

Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. General Counsel; R. Randall Campbell, Deputy Asst. General Counsel; and Rudrendu Sinhamahapatra, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge:

Charles R. Blackburn appeals from a December 30, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a hearing loss disability and which did not reopen a service connection claim for chronic ear infections. *Charles R. Blackburn*, BVA 92-____ (Dec. 30, 1992); Record (R.) at 5–12. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we will affirm the Board's December 1992 decision.

## I. FACTUAL BACKGROUND

The appellant served on active duty with the United States Army from March 31, 1952, to March 9, 1954. R. at 17. Service medical records indicated that the appellant was treated for a left earache due to impacted cerumen on September 5, 1952, and that his ears were found to be "O.K." on September 8, 1952. R. at 23. His March 8, 1954, separation examination report did not indicate any abnormality as to his ears. *See* R. at 34. According to statements from two private physicians, the appellant was treated for otitis externa on April 22, 1954, and April 26, 1954, and for otitis media in May 1954. R. at 43–44. (Otitis externa is an inflammation of the external ear and otitis media is an inflammation of the inner ear. WEBSTER'S MEDICAL DESK DICTIONARY 503 (1986).)

On April 9, 1957, the appellant filed an application with a VA regional office (RO) for service connection for fungus growth in both ears. R. at 39. On June 11, 1957, the RO denied service connection for residuals of removal of cerumen from the left ear canal and bilateral otitis externa and otitis media. R. at 46–47. The appellant did not appeal this decision, and the RO's decision became final. *See* 38 U.S.C. § 7105(b)(1), (c); 38 C.F.R. §§ 20.200, 20.201, 20.302(a) (1994); *Fluker v. Brown*, 5 Vet.App. 296, 297 (1993).

In May 1967, the appellant filed a claim seeking service connection for an ear disability. R. at 49–50. On June 16, 1967, the RO denied service connection for an ear disability. R. at 57. The RO again denied service connection on July 5, 1967 (R. at 59), and on August 7, 1967 (R. at 61). On February 2, 1968, the Board denied service connection for bilateral otitis media and otitis externa. R. at 92.

On May 26, 1970, the appellant sought to reopen the service connection claim for a fungus growth in both ears. R. at 95. In connection with the resubmitted claim, the appellant submitted a statement from a private physician, Dr. Alson Modert, who related a history of ear infection since 1954 and provided physical findings of a "[l]oss of hearing slight from prolonged ear infection occuring [sic] while in Army." R. at 99. On June 12, 1970, the RO notified the appellant that his service connection claim for fungus infections of the ears could not be reopened absent new and material evidence. R. at 102.

On April 1, 1990, the appellant filed an application seeking service connection for hearing loss. R. at 106. (The appellant also sought a total and permanent disability rating for non-service-connected pension (*ibid.*), which the RO granted (R. at 177–78).) On May 25, 1990, as part of a VA examination, the appellant wrote on a VA form that his "[e]ar infections started prior to release from the U.S. A[rmy] in 1954." R. at 155. On August 17, 1990, the RO denied service connection for hearing loss. R. at 180. In a February 5, 1991, VA Form 1–9 (Appeal to BVA), the appellant indicated that he had also been seeking service connection for ear infections. R. at 216–18.

The Board remanded the claims for further development and for the RO to seek to obtain any medical records which may have been missing. R. at 234–36. On remand, the RO continued the denial of service connection for hearing loss and the denial of reopening of the service connection claim for chronic ear infections. R. at 319–20. On December 30, 1992, the Board did not reopen the service connection claim for chronic ear infections and denied service connection for a hearing loss disability. *Blackburn*, BVA 92-____, at 7; R. at 11.

The appellant moved for reconsideration of the BVA decision by the Chairman of the BVA on March 11, 1993. R. at 340; see R. at 342 (indicating that Board received letter dated March 8, 1993, on March 11, 1993). The Chairman denied reconsideration on June 7, 1993. R. at 342. The appellant filed a second motion for reconsideration on August 2, 1993. The appellant also filed a Notice of Appeal (NOA) with the Court on August 3, 1993. In the NOA, the appellant referred only to the June 7, 1993, denial of reconsideration by the BVA Chairman. The case was then docketed as No. 93–742. The BVA Chairman denied the appellant's second motion for reconsideration on September 16, 1993.

On September 30, 1993, the Secretary filed a motion to dismiss the appeal. The appellant responded on October 25, 1993. By order dated October 27, 1993, the Court granted the Secretary's motion to dismiss the appeal docketed as No. 93–742, but construed the appellant's October 25, 1993, response as a valid NOA, and docketed the case as No. 93–1037.

## II.  ANALYSIS

### A.  Jurisdiction

■ Initially, we will address this Court's jurisdiction over this case. Although the Court issued an order on October 27, 1993, dismissing a prior appeal, construing the appellant's response to the Secretary's motion to dismiss as an NOA, and accepting that NOA as timely, jurisdictional issues may be raised at any time and by any of the parties or by the Court, sua sponte. See Phillips v. GSA, 924 F.2d 1577, 1579 (Fed.Cir.1991) ("A jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the court on its own motion."). Because of the recent decision by the United States Court of Appeals for the Federal Circuit in Mayer v. Brown, 37 F.3d 618 (Fed.Cir.1994), affirming on other grounds, No. 92–639, 1993 WL 491403 (Vet.App. Nov. 17, 1993), we will address what impact the Federal Circuit decision has had, if any, on our prior precedent regarding the jurisdictional issue involved here.

■ This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress, and we may not extend our jurisdiction beyond that permitted by law. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988); see also Prenzler v. Derwinski, 928 F.2d 392 (Fed.Cir.1991); Skinner v. Derwinski, 1 Vet.App. 2 (1990). Pursuant to Rule 4 of the Court's Rules of Practice and Procedure and 38 U.S.C. § 7266(a), an NOA must be filed with the Court within 120 days after notice of the BVA decision is mailed to an appellant and to his or her representative, if any. See Machado v. Derwinski, 928 F.2d 389, 391 (Fed.Cir.1991) (compliance with 38 U.S.C. § 7266(a) is required, and Court is not authorized to extend 120–day period for filing NOA); see also Veterans' Benefits Improvement Act of 1994, Pub.L. No. 103–446, § 511, 108 Stat. 4645, 4670 (1994) (with respect to NOAs delivered or mailed to Court on or after November 2, 1994, Congress amended 38 U.S.C. § 7266(a) to reflect "mailbox rule," providing that NOA is deemed received on date of receipt if NOA is delivered or on date of United States Postal Service postmark if NOA is properly addressed to Court and mailed); Leo v. Brown, 8 Vet.App. 28, 30 (1995).

In Rosler v. Derwinski, 1 Vet.App. 241, 246, 249 (1991), relying on the Supreme Court's holding in ICC v. Brotherhood of Locomotive Engineers, 482 U.S. 270, 284, 107 S.Ct. 2360, 2368–69, 96 L.Ed.2d 222 (1987), this Court held that a motion for reconsideration filed within 120 days after the mailing of a BVA decision tolls the appeal period and that an entirely new 120–day appeal period commences upon the mailing of the denial of a motion for reconsideration by the BVA Chairman. See also Losh v. Brown, 6 Vet. App. 87, 90–91 (1993). Recently, the Supreme Court also generally discussed the tolling rule, which provides that "[t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review." Stone v. INS, —— U.S. ——, ——, 115 S.Ct. 1537, 1543, 131 L.Ed.2d 465 (1995); see also Virgin Islands Conservation Soc'y, Inc. v. Virgin Islands Bd. of

*Land Use Appeals,* 881 F.2d 28, 31 (3d Cir. 1989). In *Stone,* the Supreme Court held that, where Congress had "depart[ed] from the ordinary judicial treatment of agency orders under reconsideration," the general tolling rule described in *Locomotive Engineers* would not apply. *Stone,* —— U.S. at ——, 115 S.Ct. at 1543.

Since the Court's decision in *Rosler,* the Federal Circuit has decided *Mayer.* In *Mayer,* 37 F.3d at 619–20, the Federal Circuit held that an action by the Board Chairman is not the type of decision that is reviewable by the Court, and that the Court may review only those final decisions made by the Board itself. *See* 38 U.S.C. § 7103(a), (b).

In light of the Federal Circuit's decision regarding the scope of this Court's jurisdiction, the question arises whether *Mayer* has had any effect on our holding in *Rosler* that a motion for reconsideration filed within the 120–day appeal period tolls the running of that period and that a new 120–day appeal period begins to run upon the mailing of the BVA Chairman's denial of that motion. The reasoning relied upon by the Court in *Rosler* remains controlling. *See Rosler,* 1 Vet.App. at 246–49; *see also Bellsouth Corp. v. FCC,* 17 F.3d 1487, 1489 (D.C.Cir.1994) (where party petitions agency for reconsideration, agency order becomes nonfinal with respect to that party). In *Mayer,* 37 F.3d at 620, the Federal Circuit stated: "There is simply no statutory basis for jurisdiction in the [Court of Veterans Appeals] over acts or decisions of the Chairman absent some underlying final decision by the [B]oard" over which the Court has jurisdiction. Thus, *Mayer* was limited to the question of what *type* of decision is reviewable in this Court, not the question of what effect a motion for reconsideration filed with the Board within the 120–day appeal period has upon this Court's jurisdiction.

In this case, the BVA decision is dated December 30, 1992. The appellant filed a motion for reconsideration with the Board Chairman on March 11, 1993, well within the 120–day period for filing an appeal with this Court. The Chairman denied the motion for reconsideration on June 7, 1993, thus commencing, under *Rosler,* a new 120–day period for filing an appeal with this Court. On August 2, 1993, the appellant filed a second motion for reconsideration with the Chairman. On August 3, 1993, however, the appellant filed an NOA with this Court. The Board Chairman denied the second motion for reconsideration on September 16, 1993.

We are not presented with the question of whether a claimant may prolong indefinitely the period for filing an appeal to this Court by filing multiple, successive motions for reconsideration by the Board Chairman. Whether we were to hold that a second motion for reconsideration tolls or does not toll the appeal period for a second time, the outcome in this case would not change. The appellant filed an NOA with the Court on August 3, 1993. If the second motion for reconsideration did not toll the appeal period, then the August 3, 1993, NOA was within the new 120–day appeal period that was created upon the BVA Chairman's denial of reconsideration on June 7, 1993. If, however, the second motion for reconsideration tolled the period for filing an appeal, then the appellant's August 3 NOA could be construed as having become effective upon the BVA Chairman's denial of the second motion on September 16, 1993. In a recent decision, the majority of a panel of the Court held that an appellant's premature NOA filed after a motion for reconsideration had been filed with the Board Chairman was ineffective during the pendency of that motion, but that the NOA became effective upon the Chairman's denial of the motion. *Wachter v. Brown,* 7 Vet.App. 396, 397 (1995) (per curiam order). In either case, the appellant's NOA was timely.

In the October 27, 1993, order, the Court dismissed the appellant's first appeal (No. 93–742), but treated the appellant's October 25, 1993, response to the Secretary's motion to dismiss as a valid NOA and transferred all the documents previously filed in connection with the first appeal to the current case number (No. 93–1037). This course of action is now in conflict with the analysis we have set forth above. Under either *Rosler* or *Wachter,* the appellant's first NOA was either timely or became timely. Of course, under *Wachter,* 7 Vet.App. at 397, the NOA

would be effective to confer jurisdiction only as to the BVA decision that predated the filing of the NOA and would not encompass any subsequent denials by the BVA Chairman. Even though the appellant's NOA referred to the June 7, 1993, denial of reconsideration by the BVA Chairman rather than the December 30, 1992, BVA decision, the NOA placed the December 1992 BVA decision on appeal and the June 1993 denial of reconsideration became the new final date of the BVA decision as well as the date of the denial of reconsideration. *See Losh,* 6 Vet. App. at 90. However, since the grounds alleged in the appellant's motion for reconsideration did not involve new evidence or changed circumstances, judicial review by this Court of the BVA Chairman's denial of reconsideration is not available. *See Romero v. Brown,* 6 Vet.App. 410, 412–14 (1994); *see also* 38 C.F.R. § 20.1000 (1994).

Consequently, the Court should have denied the Secretary's motion to dismiss rather than dismiss the first appeal (No. 93–742). However, since the instant appeal (No. 93–1037) encompasses the same issues that were presented by the first appeal, the Court's action resulted in no prejudice to the appellant. Rather than revoke the October 27, 1993, order and reinstate the first appeal, we will proceed to a disposition on the merits under No. 93–1037.

### B. Merits

#### 1. Chronic Ear Infections

■ The appellant's service connection claim for chronic ear infections was previously denied by a final BVA decision in February 1968. R. at 92. Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C. § 7104(b); *Stanton v. Brown,* 5 Vet. App. 563, 566–67 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Glynn-v. Brown,* 6 Vet.App.

523, 529 (1994); *Colvin v. Derwinski,* 1 Vet. App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome. *See Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin,* 1 Vet.App. at 174. Second, if the BVA determines that the evidence is "new and material," it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors,* 2 Vet.App. at 185.

■ The Court holds that the appellant has not submitted new and material evidence since the prior final denial. Although two newly submitted medical records indicated that the appellant's ear infections dated back to his period of service (R. at 99, 155), those references are each based on the appellant's recitation of events.

The May 1990 VA examination report describing ear infections as having commenced prior to separation from service in 1954 was clearly based on the appellant's own history of events since the description appears in a box that is captioned "SECTION B—MEDICAL HISTORY SINCE LATEST VA EXAMINATION AS RELATED BY PERSON EXAMINED." R. at 155.

The only other medical evidence describing a relationship between in-service ear infections and the appellant's current condition is Dr. Modert's 1970 report which stated, under the caption "BRIEF HISTORY": "Ear infection since 1954. Fungus inf[ection] in ear chronic. Slight hearing defect." R. at 99. Dr. Modert then wrote under the heading "PHYSICAL FINDINGS": "Loss of hearing slight from prolonged ear infection occur[r]ing while in Army." *Ibid.* While the words "occur[r]ing while in Army" do not appear underneath the heading provided for

history, Dr. Modert's findings could be predicated only upon the appellant's recitation of history. First, Dr. Modert's report does not disclose any source other than the appellant for that particular finding. Second, Dr. Modert did not reiterate that the chronic ear infection was due to service when he provided a diagnosis of chronic fungus ear infection in the same report. *Ibid.*

In *Elkins v. Brown,* 5 Vet.App. 474, 478 (1993), the Court held that a physician's letters were not new and material evidence where they were based on a claimant's previously rejected recitation of history and not on an independent review of the records. *See Kightly v. Brown,* 6 Vet.App. 200, 205–06 (1994); *Reonal v. Brown,* 5 Vet.App. 458, 460–61 (1993). Similarly, here, the two newly submitted articles of evidence consist of or are predicated on a previously rejected account of events. In *Elkins,* 5 Vet.App. at 478, the Court stated that "there [was] no indication that [the physician] formed [his] opinion on a basis separate from appellant's recitation of his medical and service background." The Court also stated that there was no indication that the physician "reviewed appellant's service medical records or other relevant documents, which would have enabled [him] to form an opinion as to service connection based on independent grounds." *Ibid.*

Thus, although there were other medical records relating to treatment for otitis media and otitis externa several weeks after service, the new medical records—which consisted of or were predicated on an account of events rejected by the Board in 1968—do not create a reasonable possibility, when viewed in the context of all the evidence, both new and old, of changing the outcome. *See Sklar,* 5 Vet.App. at 145. Therefore, the Board correctly did not reopen the service connection claim for chronic ear infections, and we will affirm that part of the Board's December 1992 decision.

### 2. *Hearing Loss*

■ The appellant's service connection claim for hearing loss is a new claim, and the Court reviews the Board's findings of fact under the "clearly erroneous" standard. *See*

*Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). "[I]f there is a 'plausible basis' in the record for the factual determinations of the BVA, ... we cannot overturn them." *Ibid.;* 38 U.S.C. § 7261(a)(4).

A July 25, 1990, VA medical record provided the appellant's recitation of complaints "of decreased hearing dating back to the 1950s." R. at 169. The examining VA physician provided a diagnosis of "[b]ilateral neurosensory hearing loss, dating back to the 1950s." *Ibid.* Dr. Modert also related the hearing loss to service. R. at 99. However, the appellant's separation examination was normal as to hearing (R. at 34–35), no evidence was presented of noise trauma during service, and contemporaneous medical records did not support the appellant's contentions regarding his medical history. *See Owens v. Brown,* 7 Vet.App. 429, 433 (1995). In addition, the appellant is not capable of opining on a matter involving medical knowledge or causation, such as a relationship between any current hearing loss and service or chronic ear infections (which would have to be service connected in order for any hearing loss to be secondarily service connected, *see* 38 C.F.R. § 3.310(a) (1994)). *See Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Therefore, the Board's denial of service connection for hearing loss has a plausible basis in the record and is not subject to reversal by the Court as clearly erroneous. *See Gilbert, supra.* We will, therefore, affirm that part of the Board's December 1992 decision as well.

### III. CONCLUSION

Accordingly, we AFFIRM the Board's December 1992 decision.