Donald M. SPALDING, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 95–302.

United States Court of Veterans Appeals.

Argued Nov. 13, 1996.

Decided Dec. 31, 1996.

Meg Bartley, with whom Barton F. Stichman, Washington, DC, was on the brief, for appellant.

Michele Russell Katina, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Thomas A. McLaughlin, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

IVERS, Judge.

The appellant, Donald M. Spalding, appeals a July 19, 1994, Board of Veterans' Appeals (BVA or Board) decision denying service connection for lung and ear disorders. Both parties have filed briefs. For the reasons that follow, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the U.S. Army from July to November 1942. Record (R.) at 60, 63–64, 66, 290. Service medical records (SMRs) reveal that on July 9, 1942, the appellant underwent a physical examination in connection with his enlistment in the Enlisted Reserve Corps. On examination the ears and lungs were found to be normal. His hearing was 20/20, bilaterally. R. at 66–67.

A record of a military physical from September 26, 1942, showed that the appellant underwent a civilian pilot training (CPT) examination which he passed "without incident." R. at 42. The military examiner noted that the CPT examination was "casual," as the appellant's ears were not inspected nor was his hearing tested. *Ibid.* The examiner noted that the appellant had been suffering from probable otitis media in the right ear for 5 to 6 years. *Ibid.* Otitis

media is an inflammation of the middle ear, which may be marked by pain, fever, abnormalities of hearing, hearing loss, tinnitus, and vertigo. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1204 (28th ed. 1994) [hereinafter DORLAND'S]. The examiner also noted that, "[f]or 2 1/2 years has had a constant daily foul purulent discharge from the *left* ear." R. at 42. The left canal was filled with a "foul grayish green pus. Abundant." R. at 39. The appellant also complained of increasing deafness on the left side for 2 years. R. at 42. It was reported that for 4 years he had had a constant cough which produced yellowish sputum daily. R. at 43. SMRs revealed that the right tympanic membrane was thickened and scarred, but no perforation or discharge was noted. The tympanic membrane is a thin layer of tissue which covers the surface of the tympanic cavity. DORLAND'S at 1007, 1767. Hearing in the right ear was approximately 20/20 and in the left ear the appellant was able to hear loud spoken conversation at a distance of 3 feet. R. at 39. A lung examination found scattered coarse moist rales at the left base with no associated signs. *Ibid.* He was diagnosed with left moderately severe chronic bronchiectasis and bilateral chronic otitis media with diminished hearing on the left side, the cause was unknown for both diagnoses. R. at 45–46. Bronchiectasis is a chronic dilation of the bronchi marked by fetid breath and paroxysmal coughing with the expectoration of mucopurulent matter. DORLAND'S at 230. A September 28, 1942, SMR reported:

> There is a bilateral otitis media which is chronic. Three years. There is a considerable amount of discharge.

> Opinion: This man is class 4 and could be [Certificate of Disability for Discharge] from the [A]rmy. He is not passable as a cadet. As he came from [civilian pilot training] he has the option of going back to civil life.

R. at 47.

Attached to his Certificate of Disability for Discharge is a "Report of Board of Medical Officers" which stated in part:

> Bronchiectasis, left lower lobe, severe, cause undetermined, chronic. L[ine of Duty]—No. [Existed Prior To Entrance] Manifested by a chronic productive cough of 4 years' duration, occasional hemoptysis, and purulent sputum; physical findings of coarse rales throughout the extent of the left lower lobe.
>
> . . . .
>
> Disability has not been aggravated by active military service.

R. at 63; *see also* R. at 31–32 (existed prior to service).

In July 1944 the appellant applied for disability compensation for his chest and ears. R. at 72–75. He underwent a VA examination in September 1944 in which he stated that he had had a discharge from his left ear for 4 years. The examiner found a purulent discharge in the left ear, impacted earwax in the right ear, a small perforation in the left drum, the right drum opaque and retracted, no perforations, and no discharge. Conversational voice test results were 15 feet in the left ear and 20 feet in the right ear. The final diagnoses included chronic otitis media suppurative with perforations, drum, left ear, residuals of right ear, and partial deafness in the left ear. R. at 79. A chest examination revealed "bronchiectasis (cylindrical) left lower lobe—slight." R. at 80

In an October 1944 rating decision, the regional office (RO) granted service connection for "bronchiectasis (cylindrical) left lower lobe slight, rated as mild chronic bronchitis" and "otitis media chronic suppurative with perforation left, hearing 15 feet left, 20 feet right," each rated 10% disabling for a combined disability rating of 20%. R. at 88. An April 1947 VA examination found that the right ear drum was dull, scarred, and retracted. The left ear drum was perforated posteriorly and inferiorly, and the middle ear was moist. Conversational voice was 20/20 in the right ear and 15/20 in the left ear. The chest examination found no moist rales, he had no cough, but was able to raise sputum. R. at 96. The diagnoses were chronic bronchiectasis, residuals of otitis media, purulent chronic otitis media, and conduction-type deafness due to chronic purulent otitis media. R. at 102.

On June 2, 1947, the appellant was notified by letter that VA intended to sever service connection for bronchiectasis and an ear condition as not having been incurred in or aggravated by service. He was told to submit evidence within 60 days of the date of the letter to show why service connection should not be severed. R. at 109; *see also* R. at 104–05, 107. In an August 11, 1947, rating decision, the RO found clear and unmistakable error in the October 1944 rating decision. R. at 111–12. The appellant was informed of the discontinuation of service connection in August 1947. R. at 114.

In December 1989 the appellant submitted the following documents in an attempt to reopen his claim: (1) Copies of audiograms from 1984 and 1989 without any interpretation of the results (R. at 131–32); (2) an October 1944 letter awarding service connection for bronchiectasis and otitis media (R. at 133); and (3) medical records and notes dated November 1989 to June 1990 showing treatment for his lungs and pneumonia (R. at 135–44).

An August 27, 1990, rating decision found that the evidence submitted showing treatment for respiratory problems and hearing loss in the 1980s was not new and material. The RO found that the evidence did not establish that the conditions began in service or existed to a compensable degree within one year of discharge. R. at 177. The appellant filed a Notice of Disagreement (NOD) claiming that both conditions were aggravated by service and a Statement of the Case (SOC) was issued. R. at 179, 181–85.

The appellant submitted VA Form 1–9, Appeal to Board of Veterans' Appeals and stated that his hearing and "breathing" conditions were aggravated by his military service. R. at 202–04. In support of his claims he submitted documents which included: a copy of an application to the Metropolitan Life Insurance Company dated October 1941 indicating that he was in good health and that he had specifically denied any problems with his chest and ears (R. at 189–91); records from July 1984 showing that he underwent an audiogram and should consider hearing aids (R. at 196–200); a certificate of honorable discharge from the military (R. at

205–06); a copy of a license issued by the Civil Aeronautics Authority in July 1942 showing that he was physically qualified for Commercial–Army pilot status (R. at 208–09); and a January 1976 letter from C.L. Chambers, M.D., with attachments in which it was reported that the appellant underwent a right tympanoplasty (R. at 213–19). A tympanoplasty is the surgical reconstruction of the hearing mechanism of the middle ear, with restoration of the drum membrane to protect the round window from sound pressure. DORLAND'S at 1767. A Supplemental SOC (SSOC) was issued. R. at 229–33.

On March 30, 1992, the BVA rendered a decision remanding the case. R. at 245–48. The RO was instructed to have the appellant prepare a detailed list of all medical treatment he had received for his ear and lung disorders and to obtain those records. R. at 247–48.

In response, the appellant submitted a letter in June 1992 to which he attached a letter from John D. Merryman, M.D. The appellant reported that in 1943 and 1944 he had been treated by several doctors, but could not remember their names and believed that they would have passed away by the time of the letter. He could not remember any doctors who had treated him before 1941, but stated that from 1976 to 1985 he went to the Otologic Medical Group and was seen by Drs. Sheehy and Johnson, audiologists; he saw a Dr. Ridge for lung congestion; and was seen by numerous VA physicians. R. at 255–56.

Medical records from August 1974 to June 1976 showed treatment by Dr. Chambers for the appellant's ears. R. at 258–63. Records were also received from the Rapid City Regional Hospital for the period from 1960 to March 1961, showing treatment for chronic otitis media. R. at 267–82. In an April 1993 rating decision, the RO confirmed the prior denial of service connection for ear and lung conditions. R. at 286. An SSOC was issued. R. at 288–93.

Documents were received which included: medical records for unrelated treatments (R. at 296–311, 345–46); an August 1985 letter from Kennett G. Sublette, M.D., delaying ear surgery for one year (R. at 314); an April

1972 letter from Dr. Merryman suggesting that the appellant move to a warm climate because of his bouts with pneumonia and his lobectomy (R. at 315) (A lobectomy is an excision of a lobe, as of the lung. DORLAND'S at 955); duplicate records from Dr. Chambers showing a right tympanoplasty in November 1975 (R. at 316–19); a copy of a New York Life Insurance Company application from April 1950 in which the appellant gave a medical history of "mild" bronchiectasis from 1942 and a perforated ear drum from 1941 which "causes no trouble affects hearing" (R. at 320–23); a copy of a November 1989 radiology report showing changes consistent with a lobectomy (R. at 324); a May 1993 VA report showing a diagnosis of bronchiectasis (R. at 326); a copy of an April 1979 audiogram without any interpretation of the results (R. at 327); copies of checks to various doctors for unspecified treatments (R. at 328–37); a hospital discharge summary report from December 1990 showing, in part, a partial left lobe resection for bronchiectasis (R. at 338–43); a copy of a Nevada Blue Shield claim form showing office visits to a doctor from July 1976 to April 1977 (R. at 344); and records from February 1981 to May 1982 showing treatment for pneumonia (R. at 347–52).

In July 1993 the appellant submitted additional medical records which included: records showing that he underwent a left ear tympanoplasty in April 1960 (R. at 377); records from February 1967 to June 1971 showing treatment by Dr. Sublette for both left and right ear conditions, including a right ear tympanoplasty (R. at 371–76); and an August 1985 record showing treatment by Dr. Sublette for hearing loss in both ears (R. at 370). In September 1993 the RO confirmed its denial of service connection for both conditions. R. at 384–86. An SSOC was issued. R. at 388–92. The appellant submitted an NOD with attachments in which it was revealed that in July 1942, during his aerobatics training, he had begun to bleed from his ears. R. at 397.

On July 19, 1994, the Board rendered the decision currently on appeal. R. at 5–22. The Board determined that the appellant's otitis media, left ear hearing loss, and lung disorder, including bronchiectasis, were present prior to his entry on active duty. R. at 7. They also found that his otitis media, hearing loss, lung disorder, and bronchiectasis did not increase in severity while he was on active duty. The Board concluded that neither of his claimed disorders was incurred in or aggravated by service. R. at 8.

## II. ANALYSIS

When a veteran attempts to reopen a previously denied claim, the BVA must undertake a two-step analysis. *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the last final disallowance of the claim is "new and material." *See Blackburn v. Brown*, 8 Vet. App. 97, 102 (1995); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Three questions must be asked. First, is the evidence new? "New" evidence is that which is not "merely cumulative" of other evidence on the record. Second, is the evidence probative of the issue at hand? Finally, if it is determined that the evidence is new and probative, then, in light of all of the evidence of record, is there a reasonable possibility that the outcome of the claim on the merits would be changed? *Evans v. Brown*, 9 Vet.App. 273, 283 (1996); *see also Blackburn, supra; Cox v. Brown*, 5 Vet.App. 95, 98 (1993); *Colvin, supra*. Next, if the BVA determines that the evidence is "new and material," it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). The Secretary and this Court are required to review all of the evidence submitted by the claimant since the last final disallowance of the claim to determine whether a claim must be reopened and readjudicated on the merits. *Evans*, 9 Vet. App. at 283. The Board must assume the credibility of the evidence when considering whether it is new and material. *Justus v. Principi*, 3 Vet.App. 510, 512 (1992). Whether evidence is new and material is a question of law which this Court reviews de novo under 38 U.S.C. § 7261. *See Masors*, 2 Vet. App. at 185; *Colvin*, 1 Vet.App. at 174.

The appellant has submitted many documents in an attempt to reopen his claims. The Court notes that many of these documents, while new, are not material in that they are not probative of nexus. They show treatment for his claimed disorders beginning in the 1960s, more than 20 years after service, but they do not show any causal relationship to service. There are only three possibly significant documents of all those submitted. The first one is a copy of an April 1950 application for life insurance in which the appellant stated that he had had bronchiectasis since 1942 and a perforated ear drum since 1941, which affected his hearing but caused no other problems (document 1). R. at 320–23. The second is a license issued by the Civil Aeronautics Authority was submitted, showing that he was "properly qualified and is medically able to perform the duties of a Student Pilot." The license indicates that it is signed by an authorized medical examiner (document 2). R. at 208–09. Finally, there is a statement by the appellant in which he reported that his ears had bled in July 1942 during aerobatics training shortly after his entrance into service (document 3). R. at 397.

The Court notes that documents 1—3 are new. As to document 1, while it is probative in that it may tend to show that the appellant's bronchiectasis did not exist before service, in light of the Board of Medical Officers Report indicating that the bronchiectasis did exist before service, there is no reasonable possibility of outcome change. Further, as to document 1, it is not probative as to the appellant's otitis media in that it shows preservice ear problems. As to document 2, absent a showing of what constituted "properly qualified" and "medically able," it is not probative to show that either the appellant's lungs or his ears were normal at entrance into service. Furthermore, there is no copy of the examination in the record to indicate how comprehensive it was or whether his ears or lungs were examined. R. at 208–09. As to document 3, it is not probative as to whether the reported incident demonstrated an increase in disability as opposed to a temporary exacerbation. *See Browder v. Brown*, 5 Vet.App. 268, 270–71 (1993); *Hunt v. Derwinski*, 1 Vet.App. 292, 297 (1991).

Even assuming probativeness as to an increase in disability, in light of the appellant's SMR (R. at 39) which shows more impaired hearing than was shown at a subsequent VA hearing examination report dated September 1944, there is no reasonable possibility of outcome change.

## III. CONCLUSION

For the reasons stated above, the BVA's July 19, 1994, decision is AFFIRMED.