Citation Nr: 1237373 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 06-28 917 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for a cervical spine disability. 

2. Entitlement to service connection for a lumbar spine disability. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Timothy D. Rudy, Counsel





INTRODUCTION

The Veteran served on active duty from May 1996 to August 2004. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. Subsequently, this matter was remanded for additional development in Board decisions dated in December 2009 and February 2011. 


FINDINGS OF FACT

1. The evidence of record indicates that the Veteran's cervical spine disability is manifested, at least in part, by arthritis of the cervical spine that was manifested within one year following the Veteran's separation from active duty service.

2. The evidence of record indicates that the Veteran's lumbar spine disability is manifested, at least in part, by arthritis of the lumbar spine that was manifested within one year following the Veteran's separation from active duty service.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a cervical spine disability, diagnosed as cervical strain and degenerative disc disease, have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2012). 

2. The criteria for entitlement to service connection for a lumbar spine disability, diagnosed as lumbar strain and degenerative disc disease, have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2012). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2012). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In addition, the notice requirements of the VCAA apply to all five elements of a service connection claim, including: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

The Veteran was notified of the provisions of the VCAA by the RO and AMC in correspondence dated in October 2004, April 2006, June 2006, December 2009, and May 2010. These letters notified the Veteran of VA's responsibilities in obtaining information to assist him in completing his claims, identified the Veteran's duties in obtaining information and evidence to substantiate his claims, and provided other pertinent information regarding the VCAA. 

Regarding the issues of service connection for cervical and lumbar spine disabilities, the Board is granting in full the benefits sought on appeal. Accordingly, assuming, without deciding, that any error was committed with respect to either the duty to notify or the duty to assist, such error was harmless and need not be further considered. 

Service Connection - Laws and Regulations

Service connection may be granted for a disability resulting from personal injury suffered or disease contracted in line of duty or for aggravation of preexisting injury suffered or disease contracted in line of duty. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303. 

VA regulations also provide that where a veteran served 90 days or more of continuous, active military service during a period of war or after January 1, 1947, and certain chronic diseases, including arthritis, become manifest to a degree of 10 percent within one year from date of termination of service, such disease shall be presumed to have been incurred in service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113 (West 2002); 38 C.F.R. §§ 3.307, 3.309. 

In addition, service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). For the showing of chronic disease in service, there are required a combination of manifestations sufficient to identify a disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word chronic. Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or when the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b). 

Generally, in order to prevail on the issue of service connection on the merits, there must be medical evidence of (1) a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. Hickson v. West, 12 Vet. App. 247, 253 (1999). The Federal Circuit has held that a veteran seeking disability benefits must establish the existence of a disability and a connection between service and the disability. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000). 

When a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether that evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 

Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

Cervical Spine

The Veteran seeks service connection for a cervical spine disability. The written submissions of the Veteran and his representative essentially contend that the Veteran's neck pain began in service and that a magnetic resonance imaging (MRI) scan within 12 months of discharge showed degenerative disc disease in the cervical spine. 

Service treatment records are negative for any neck injuries or treatments, although the RO noted that a March 2000 record showed a sore neck after an iron fell on the head from about four or five feet. However, the Board's review of this record shows that the patient at that time was not the Veteran, but the Veteran's wife. It appears that the Veteran never received a discharge examination when he was separated from service. A Physical Evaluation Board in May 2004 had recommended discharge with severance pay because of the Veteran's chronic left knee pain. 

Post-service, a December 2004 VA primary care record noted that the Veteran had occasional pain in the lower neck region but currently took no medications. On examination, his neck palpated normally. 

A private March 2005 medical record noted that the Veteran had complained of neck pain on and off for several years, that the neck pain began in service two or three years before, and that this neck pain had resolved with opiod and rest. The neck was minimally tender. 

A March 2005 MRI scan and an April 2005 private medical record of Dr. C.P.K. showed a degenerative disc in the cervical spine at the C5-6 level within 12 months of the Veteran's discharge from service. Diagnosis was a cervical degenerative disc and cervicalgia. 

An August 2005 VA clinic record noted that the Veteran complained of chronic neck pain due to a previously diagnosed disc problem by Dr. C.P.K. He was noted not to be in any distress; his neck was supple and there was no jugular vein distention or lymph adenopathy. 

A November 2005 VA primary care clinic treatment record noted during the course of an examination that the Veteran's neck palpated normally. 


The Veteran underwent a VA examination in August 2010. He told the examiner that he first had neck pain in service after he was hit in the head with a wooden railroad tie in 2000. He did not fall and was hit on the right side of his occiput. He said that he did not report to a hospital or medic, but took an aspirin and went back to work. He said that his head and his neck hurt for a short period, but eventually these pains resolved. He had neck pain again in service in 2003 that was similar in nature and location to the neck pain following the accident. The pain was mild initially, however, over time it worsened. He went to a specialist in Tennessee who told him it was likely secondary to being hunched over using a laptop. The Veteran now worked as a network administrator, which required more than average time at a computer or laptop. After discharge from service, he had been a full-time student for several years. 

It was noted that the neck pain was mostly left-sided and worse with lifting groceries and doing push-ups. The Veteran had not had any treatment for neck pain and noted that he had full range of motion. With full lateral range of motion he felt some neck strain, but the pain did not impair his ability as long as he did not do strenuous activity. Left hand and left arm numbness were also noted when neck pain acted up, which also affected the left middle and ring fingers. His neck pain was described as mild and lasted one to two days weekly or monthly. 

On examination, posture, gait and symmetry were normal. There was no abnormality of the cervical sacrospinalis but for tenderness noted for the left sacrospinalis. Diagnosis was cervical strain with neck pain not affecting his usual daily activities. 

The VA examiner opined that the Veteran's cervical spine complaints were not caused by or a result of military service. While the Veteran had a very mild cervical degenerative arthritis, the examiner thought it very unlikely that such was service-related. The examiner noted that the Veteran's initial neck injury occurred on the right side of his occiput, yet most of his pain was left-sided in nature. Although the Veteran noted that after the initial injury he had a similar left-sided pain this may have been due to a temporary muscle strain. The VA examiner stated that the Veteran's cervical strain was more likely secondary to his posture during his constant computer use while at school and now while at work. 

The VA examiner went on to note few complaints of neck pain recorded in the service treatment records or in post-service private or VA medical records. While the Veteran complained of neck pain in an April 2005 private medical record, a MRI scan only showed slight disc space narrowing with slight bulging annulus and dessication, but no significant neuroforamina encroachment. Diagnosis then was cervical degenerative disc and cervicalgia. The VA examiner concluded that overall the Veteran had sporadic occurrences of his neck pain more consistently related to his daily activities than any chronic injury from service. 

In a May 2012 addendum, the August 2010 VA examiner reviewed outstanding VA medical records and the claims file and stated that he found no additional information in support of the Veteran's claim for service connection for a cervical spine disability. Therefore, he noted that his original opinion and rationale remained the same. 

Based on the evidence of record, and resolving all reasonable doubt in favor of the Veteran, the Board finds that entitlement to service connection for a cervical spine disability is warranted in this case. The Board notes that the Veteran has a current cervical spine disability, diagnosed by the August 2010 VA examiner as very mild cervical degenerative arthritis and cervical strain. Moreover, as noted above, medical and lay evidence in the claims file supports that this Veteran complained of neck pain several times during service. The competent medical and lay evidence of record also shows that the Veteran endured neck pain during service and after discharge. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Moreover, in March 2005, there was a specific finding of arthritic changes of the cervical spine and in April 2005 he was also diagnosed with a cervical degenerative disc and cervicalgia. As noted above, a cervical spine disability may be presumed to have been incurred during service if arthritis in the spine becomes disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. In this case, there is VA and private medical evidence of arthritis of the cervical spine within one year of the Veteran's period of active duty. 

As such, the Board finds that service connection for a cervical spine disability, diagnosed as cervical strain and degenerative disc disease, is warranted under 38 C.F.R. §§ 3.307, 3.309. The August 2010 VA negative opinion notwithstanding, the Board finds that presumptive service connection is warranted in this case and there is no need of a competent medical opinion. While the August 2010 examiner asserted that the Veteran's neck disability was more likely secondary to his posture during post-service computer use, the Board finds that the examiner apparently misinterpreted complaints of neck pain on and off for several years going back to the Veteran's time in service found in a private medical record and in the Veteran's own report to the examiner. Because of this, in the Board's view this evidence does not amount to affirmative evidence of an intercurrent cause to the Veteran's cervical spine disability in the time between separation for service and diagnosis within a year of service. Thus, the Board affords the Veteran all reasonable doubt and finds there is no competent evidence that prevents the award of presumptive service connection for a cervical spine disability. 

Therefore, the Board concludes that a cervical spine disability was incurred as a result of the Veteran's period of active service, and the Veteran's claim for service connection for a cervical spine disability is granted. 38 U.S.C.A. § 5107(b); see Gilbert, 1 Vet. App. at 49. 

Lumbar Spine

The Veteran seeks service connection for a lumbar spine disability. In his written submissions, the Veteran and his representative essentially contend that the Veteran's lumbar pain began in service and that X-ray and MRI evidence within a year of discharge from service showed degenerative disc disease in the lumbar spine. 

Service treatment records show complaints of lower back pain and a diagnosis of musculoskeletal strain/muscle spasm in March 1997. The record noted that the Veteran gave a history of placing a book in a co-worker's hands while sitting down when he suddenly began to feel as though something snapped or pushed in his lower back. Pain was described as sharp and localized to the L4-L5 region. 

In August 2000 the Veteran was diagnosed with lower back pain secondary to muscular strain. He had awoken two days before with increased pain and decreased range of motion to his mid-back after shoveling. Physical therapy was recommended. It was noted that he was placed on limited duty - working half-days and not lifting anything weighing more than 15 pounds. 

Back pain was noted again in October 2002 along with radicular neuropathy. 

The Veteran was evaluated for acute mid-back pain and muscle spasm in April 2003. 

It appears that the Veteran never received a discharge examination upon separation from active service in August 2004. A Physical Evaluation Board in May 2004 had recommended discharge with severance pay because of the Veteran's chronic left knee pain. In a June 2004 report of medical assessment, the Veteran wrote that he had suffered from mild recurring back strains while on active duty. The examiner who cleared the Veteran for separation made no specific comment on the Veteran's notation concerning back strain. 

Post-service, an October 2004 VA medical record noted that the Veteran, when seen to become an established patient at the VAMC, complained of chronic back pain. 

A December 2004 VA primary care record noted that the Veteran had some low back pain but currently took no medications. 

A VA clinic record dated in August 2005 noted that the Veteran complained of lower back pain and saw Dr. C.P.K. 

A September 2005 private medical record of Dr. C.P.K. indicated that X-ray studies of the lumbar spine showed disc degeneration at the L5-S1 level 13 months after the Veteran's discharge from service. It was noted that the Veteran reported he had had low back pain since service starting about 1999 or 2000. Dr. C.P.K. administered a detailed musculoskeletal physical examination and noted mild tenderness over the lumbar spine, but full range of motion with no sensory and motor deficits in the upper or lower extremities. 

A September 2005 private MRI scan and October 2005 medical record showed a minimal disc bulge at L4-5 with no evidence of neurologic impingement. There was no evidence of focal herniation or stenosis. 

The Veteran underwent a VA examination in August 2010. He complained of intermittent low back pain with remissions with moderate flare-ups every five to six months due to increased activity or lifting. The Veteran told the examiner that he first experienced back pain in service about 1997 after he slipped on the ice going into work and fell on his back. Initially he went to the emergency room and then he recalled going to work later. He said that the back pain resolved with anti-inflammatory treatment. After awhile the pain returned, usually with or after strenuous activity. The Veteran described the sensation as "acute pain" that felt "like a pinch" in the left lower back just lateral to the spine. This pain had increased in frequency over the last year. The Veteran described it as an "annoying" pain. Effective relief included ibuprofen, muscle relaxants, and rest. 

The VA examiner noted a one-week period of incapacitation about four to six weeks before this examination and a previous episode six months before. The Veteran was able to walk more than a quarter mile but less than a mile. It was noted that previously he could lift 350 pounds, but now could not lift much weight. 

On examination, posture, gait and symmetry were normal. Diagnosis was lumbar strain and mild L4-L5 disc bulge. 

The VA examiner opined that the Veteran's lumbar strain with bulging disc was less likely than not caused by or a result of military service. The VA examiner explained that the Veteran had multiple complaints of back pain since service but subsequent evaluations had not found any significant anatomic reason for it. The Veteran described the pain as being in the para-vertebral muscle on the right side of the lumbar spine rather than over the spine which was more consistent with muscle strain rather than lumbar degenerative arthritis. Although the Veteran did have a mild disc bulge at L4-L5 this was not an uncommon finding even in patients with no back pain and it was unlikely that this problem was the cause of the Veteran's periodic back pain flare-ups. His periodic back pain was more likely due to his lumbar muscular weakness that was aggravated by increased activity then it was due to any injury caused in service. The examiner noted that because of the Veteran's chronic knee pain he limited his physical activity and exercise which contributed to the further weakening of the spine. 

In a May 2012 addendum, the August 2010 VA examiner reviewed outstanding VA medical records and the claims file and stated that he found no additional information in support of the Veteran's claim for service connection for a lumbar spine disability. Therefore, he noted that his original opinion and rationale remained the same. 

Based on the evidence of record, and resolving all reasonable doubt in favor of the Veteran, the Board finds that entitlement to service connection for a lumbar spine disability is warranted in this case. The Board notes that the Veteran has a current lumbar spine disability, diagnosed by the August 2010 VA examiner as lumbar strain and mild L4-L5 disc bulge. Moreover, as noted above, medical and lay evidence in the claims file supports that this Veteran complained of low back pain several times during service. The competent medical and lay evidence of record also shows that the Veteran endured low back pain during service and after discharge. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Moreover, in September 2005, within 13 months of discharge from service, there was a specific finding of arthritic changes of the lumbar spine at both the L5-S1 and L4-L5 levels. As noted above, a lumbar spine disability may be presumed to have been incurred during service if arthritis in the spine becomes disabling to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. In this case, there is private medical evidence of arthritis of the lumbar spine within approximately one year of the Veteran's period of active duty. 

As such, the Board finds that service connection for a lumbar spine disability, diagnosed as lumbar strain and degenerative disc disease, is warranted under 38 C.F.R. §§ 3.307, 3.309. . The August 2010 VA negative opinion notwithstanding, the Board finds that presumptive service connection is warranted in this case and there is no need of a competent medical opinion. While the Board notes that the examiner claimed that the Veteran's low back disability was less likely than not caused by or a result of military service; he apparently misinterpreted complaints of back pain during service because there was no service treatment record to document his first complaint and the Veteran had only "sporadic" complaints of low back pain post-service. Because of this, in the Board's view this evidence does not amount to affirmative evidence of an intercurrent cause to the Veteran's lumbar spine disability in the time between separation for service and diagnosis about a year after service. Thus, the Board affords the Veteran all reasonable doubt and finds there is no competent evidence that prevents the award of presumptive service connection for a lumbar spine disability. 

Therefore, the Board concludes that a lumbar spine disability was incurred as a result of the Veteran's period of active service, and the Veteran's claim for service connection for a lumbar spine disability is granted. 38 U.S.C.A. § 5107(b); see Gilbert, 1 Vet. App. at 49. 










 (CONTINUED ON THE FOLLOWING PAGE)
ORDER

Service connection for a cervical spine disability, diagnosed as cervical strain and degenerative disc disease, is granted, subject to the laws and regulations governing the award of monetary benefits. 

Service connection for a lumbar spine disability, diagnosed as lumbar strain and degenerative disc disease, is granted, subject to the laws and regulations governing the award of monetary benefits. 



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs