﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 200331-75169
DATE: February 26, 2021

ORDER

Service connection for the cause of the Veteran's death is denied.

FINDINGS OF FACT

1. The Veteran did not serve in the Republic of Vietnam and the preponderance of the evidence is against the finding that his duties placed him in contact with herbicide agents at or near the base perimeter at U-Tapao Royal Thai Air Force Base, or that he was otherwise exposed to herbicides during his military service. 

2. The Veteran died in April 2019. His death certificate lists the immediate cause of death as ventilator dependent respiratory failure and coronary artery disease (CAD) with bypass surgery.

3. At the time of the Veteran’s death, service connection was established for hearing loss and tinnitus. 

4. The preponderance of the evidence is against the finding that the Veteran’s respiratory failure and CAD were otherwise related to service. 

CONCLUSION OF LAW

The criteria for service connection for cause of the Veteran’s death have not been met. 38 U.S.C. §§ 1110, 1131, 5107, 1310; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.312.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty in the United States Air Force from March 1965 to October 1968. The Veteran died in April 2019. The Appellant is the Veteran’s surviving spouse. 

This matter is before the Board of Veterans’ Appeals (the Board) on appeal from the March 2020 Department of Veterans Affairs (VA) Regional Office (RO) rating decision. The rating decision denied service connection for the cause of the Veteran’s death. 

In the March 2020 VA Form 10182, Decision Review Request: Board Appeal, the Appellant elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

Entitlement to service connection for the cause of the Veteran's death.

In her June 2019 statement, the Appellant contends that the Veteran’s death is due to herbicide exposure during his service at the U-Tapao Royal Thai Air Force Base (URTAFB). The Appellant indicates that the Veteran stated that while he was serving at the base, there were chemicals used to keep any foliage and grass killed. The Appellant further indicates that she believes that the Veteran’s CAD was caused by his exposure to these chemicals. In a July 2019 statement, the Appellant indicates that the Veteran’s hypertension began in “1070’s” (suggesting that it was the 1970’s), that in 2000 the Veteran had angina which was later diagnosed as CAD, and that in 2007 he was diagnosed with diabetes mellitus type II (DMII). 

VA death benefits are payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C. § 1310; 38 C.F.R. §§ 3.5, 3.312. To establish service connection for the cause of a veteran’s death, the evidence must show that a disability incurred in or aggravated by active service was the principal or contributory cause of death. 38 C.F.R. § 3.312. 

To be considered a principal cause of death, a service-connected disability must have been singly or jointly with some other condition the immediate or underlying cause of death or have been etiologically related to the cause of death. For a service-connected disability to be a contributing cause, it must have substantially or materially contributed to a veteran’s death; it is not sufficient to show that it casually shared in producing death, but rather there must be a causal connection. A contributory cause of death is inherently one not related to the principal cause. 38 U.S.C. § 1310; 38 C.F.R. § 3.312 (b), (c). 

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty from active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service’ the so-called nexus’ requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (citing Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that which is pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

Service connection for certain chronic diseases may also be established on a presumptive basis by showing that such a disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307 (a) (3), 3.309(a). In such cases, the disease is presumed under the law to have had its onset in service even though there is no evidence of such disease during the period of service. 38 C.F.R. § 3.307 (a). 

To establish service connection under this provision, there must be: evidence of a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307), and subsequent manifestations of the same chronic disease; or if the fact of chronicity in service is not adequately supported, by evidence of continuity of symptomatology after service. The provisions of 38 C.F.R. § 3.303 (b) relating to continuity of symptomatology, however, can be applied only in cases involving those conditions explicitly enumerated under 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

VA laws and regulations provide that if a veteran was exposed to an herbicide agent during service, certain listed diseases, including CAD, are presumed to be related to that herbicide exposure, and absent affirmative evidence to the contrary, service connection is granted on a presumptive basis. 38 U.S.C. § 1116(a)(1); 38 C.F.R. § 3.309(e). A veteran who “served in the Republic of Vietnam” between January 9, 1962 and May 7, 1975 is presumed to have been exposed during such service to an herbicide agent. 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii). VA initially interpreted the applicable regulation to mean that the presumption of service connection applies to those service members who physically set foot in Vietnam. See Haas v. Peake, 544 F.3d 1306, 1308 (Fed. Cir. 2008). More recently, VA expanded the presumption of in-service herbicide exposure to include service in the 12 nautical mile offshore waters of the Republic of Vietnam. See 38 U.S.C. § 1116A (effective January 1, 2020). Additionally, the presumption of in-service herbicide exposure is also extended to certain Vietnam era veterans who served in Korea, and certain Air Force veterans who regularly and repeatedly operated, maintained, or served onboard C-123 aircraft that were known to have been used to spray an herbicide agent during the Vietnam era. 38 C.F.R. § 3.307 (a)(6)(iv), (v). 

Although the presumption of in-service herbicide exposure does not extend to veterans who served in Thailand during the Vietnam era, VA recognizes that there was a significant use of herbicides used on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes. See Veterans Benefits Administration (VBA) C&P Service Bulletin (May 2010). A primary source for this information was the declassified Vietnam era Department of Defense (DOD) document titled, “Project CHECO Southeast Asia Report: Based Defense in Thailand.” Although DOD documented that the herbicide use was commercial in nature rather than tactical (such as Agent Orange), Compensation and Pension has determined that there was some evidence that herbicides of a tactical nature, or that of a “greater strength” commercial variant, were used. While the Veteran is not entitled to a presumption of in-service herbicide exposure as a result of service in Thailand, due consideration is given as to whether exposure to herbicide agents can be conceded on a facts-found basis for certain veterans who served in Thailand. Exposure to herbicides on a factual basis may be extended to Veterans whose duties placed them on or near the perimeters of Thailand Air Bases during the Vietnam era, to include U-Tapao Royal Thai Air Force Base, Nakhon Phanom Royal Thai Air Force Base, Udorn Royal Thai Air Force Base, Takhli Royal Thai Air Force Base, Korat Royal Thai Air Force Base, and Don Muang Royal Thai Air Force Base. The majority of troops in Thailand during the Vietnam era were stationed at one of these bases. If a veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by military occupational specialty (MOS), performance evaluations, or other credible evidence, then herbicide exposure may be acknowledged on a facts-found or direct basis. 

Lay assertions may serve to support a claim for service connection by establishing the occurrence of observable events or the presence of disability or symptoms of disability subject to lay observation. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

The credibility and weight of all the evidence, including the medical evidence, should be assessed to determine its probative value, and the evidence found to be persuasive or unpersuasive should be accounted for, and reasons should be provided for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

It is the Board’s responsibility to determine whether a preponderance of the evidence supports the claim or whether the evidence is in relative equipoise, with the veteran prevailing in either event, or whether there is a preponderance of evidence against the claim, in which case the claim must be denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Then, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. 

The initial inquiry in this matter is whether the Veteran was exposed to herbicide agents during his service at URTAFB on a facts found basis. In this regard, the Veteran’s military personnel records contain a Citation to Accompany the Award of the Air Force Commendation Medal, indicating that the Veteran served as a jet engine mechanic at URTAFB from December 31, 1966 to December 11, 1967. 

The Veteran’s performance evaluation from that time period lists his duty as jet engine mechanic, crew member, jet engine base maintenance. The performance evaluation indicates that the Veteran performed major and minor repair and reconditioning inspections on J57-59W jet engines. It also indicates that the Veteran removed and replaced accessories and components and maintained ground support equipment and special tools, as well as additional duties as assigned. The performance evaluation indicates that the Veteran recently assisted the flight line in the removal and replacement of an inlet guide vane case while the engine was installed on the aircraft and that the task took 3 hours. 

In November 2019, the RO issued a memorandum of a formal finding of lack of sufficient information to request research of unit records. The memorandum confirms the service dates for the Veteran’s URTAFB service and his military specialty occupation (MOS) as a jet engine mechanic. The memorandum indicates that there is no presumption of secondary exposure based on being near or working on aircraft that flew over Vietnam or handling equipment once used in Vietnam. The memorandum goes on to state that high altitude jet aircraft stationed in Thailand generally flew far above the low and slow flying UC-123 aircraft that sprayed tactical herbicides over Vietnam during Operation RANCH HAND. The memorandum also indicates that there is no evidence that the Veteran was exposed to herbicides in Thailand or any other location. The memorandum concludes that there is insufficient information of record to request a research of unit records for Agent Orange exposure verification. 

Based on the review of the entire file, the preponderance of the evidence supports the finding that the Veteran’s URTAFB service did not meet the requirements for exposure to herbicides for Air Force veterans who served on or near the perimeter of Air Force bases in Thailand on a facts found basis. 38 C.F.R. § 3.307 (a)(6)(iv). As previously noted, herbicide exposure may be extended to veterans who served at Royal Thai Air Force bases and performed duties as security policemen, security patrol dog handlers, members of a security police squadron, or otherwise have served at or near the air base perimeter as shown by evidence of daily work duties, performance valuation repots, or other credible evidence. 

In this case, the Veteran’s duties are well documented and do not reflect that he served at or near the air base perimeter in a manner to have been in contact with herbicides or its residue in the defoliated areas. Military personnel records show that the Veteran worked as a jet engine mechanic and performed maintenance on jet engine aircraft. The Veteran’s performance evaluation reflects that he repaired and inspected equipment without any indication that this took place at or near the base perimeter. Moreover, the performance evaluation indicates that while the Veteran may have at times supported the flight line, this was not a regular occurrence. Specifically, the performance evaluation states that one recent time the Veteran assisted with a task on the flight line, but that task took only 3 hours. This notation suggests that the Veteran did not regularly work on the flight line and that his duties were in a different location where he maintained equipment. Thus, the evidence does not suggest that the Veteran’s duties would have caused him to enter areas that were treated with herbicides. Further, there is no reason to suggest that the equipment the Veteran worked with was sprayed with herbicides. 

Although the Appellant contends that the Veteran reported serving where chemicals were used to keep foliage and grass killed, this alone does not establish that the Veteran had requisite service at or near the base perimeter; or, that he was exposed to Agent Orange. The Appellant has not reported, and the Veteran’s personnel records do not suggest that he traversed the defoliated security perimeters of the base or had any direct physical contact with herbicide agents or residuals. Thus, while higher-strength grade herbicides may have been used to treat the foliage at URTAFB when the Veteran was stationed there, in order to concede herbicide exposure for purposes of establishing service connection on that basis, evidence must show that the Veteran’s duties regularly placed him at or near the base perimeter. In this case the records show that the Veteran was stationed at a base where higher-strength commercial grade herbicides may have been used, but there are no credible substantiating records that the Veteran performed duties which required him to be near the air base perimeter as shown by evidence of daily work duties, performance evaluations, or other credible evidence. 

Accordingly, in-service herbicide exposure is not conceded, and service connection for the Veteran’s death-causing CAD based on in-service herbicide exposure is not warranted. 

With respect to direct service connection, the competent credible evidence of record does not suggest that the Veteran’s CAD was otherwise related to service. The Appellant has not asserted that the Veteran’s CAD had its onset in service, and the evidence of record does not support this contention. The Veteran’s service treatment records (STRs) have been associated with the file and note no treatment or mention of heart problems. An August 1968 separation examination noted a normal heart and vascular system. Moreover, the Appellant has not alleged, and the record does not reflect, that the Veteran’s CAD is in any other way related to service. 

As noted above, the Appellant indicated that the Veteran was treated for hypertension in the 1970’s, which she believes led to her late husband’s CAD. In this regard, the Veteran’s STRs do not suggest that the Veteran had hypertension during service and the Veteran’s 1968 separation examination indicates a normal blood pressure reading of 122/70. Furthermore, the record does not reflect that the Veteran had hypertension to a compensable degree within the first post-service year. Thus, even if the Veteran’s hypertension began in the 1970’s, the record does not indicate that it is due to disease or injury in service. Therefore, any potential link between hypertension and CAD is not dispositive of this appeal.

Of note, VA did not obtain a medical opinion with respect to nexus in this case. However, one is not required in this case. As the evidence has failed to establish an in-service event/injury or a competent indication of an etiological relationship, VA is not required to seek a medical opinion and the claim must be denied. McLendon v. Nicholson, 20 Vet. App. 79 (2006). 

(Continued on the next page)

 

In sum, the evidence does not show that the Veteran was involved in perimeter security duty, or any other duties that placed him at or near the base perimeter, while working as a jet engine mechanic at URTAFB. Thus, the weight of the evidence is against the finding that the Veteran was exposed to herbicides while stationed in Thailand. Additionally, the preponderance of the evidence is against the finding that the Veteran’s CAD was otherwise causally related to his service. As the preponderance of the evidence is against the Appellant’s claim, the benefit of the doubt rule is not applicable. See 38 U.S.C. § 5107 (b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 5557 (1990); 38 C.F.R. § 3.102. For these reasons, the claim is denied.

 

 

L. B. CRYAN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Kuksova, Kseniya

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.