Citation Nr: 1550147 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 12-27 737 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for a left ankle disorder.

2. Entitlement to service connection for a left wrist disorder.

3. Entitlement to separate service connection for a chronic disability manifested by memory loss.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Veteran and his Spouse




ATTORNEY FOR THE BOARD

Marcus J. Colicelli, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1969 to November 1971.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia. The Veteran submitted a notice of disagreement (NOD) in July 2010, a statement of the case (SOC) was issued in August 2012, and the Veteran perfected his appeal with the timely filing of a VA Form 9 (substantive appeal) in October 2012. 

In March 2014, the Veteran testified at a Board videoconference hearing before the undersigned. A transcript of this hearing is associated with the file.

This appeal was previously before the Board in January 2015. The Board remanded the matter to the Agency of Original Jurisdiction (AOJ) for additional development, including new VA examinations for the issues on appeal. The matter is once again before the Board for appellate consideration of the issue on appeal. 

The Board notes this appeal originally included entitlement to service connection for tinnitus. However, that issue was granted in a May 2015 rating decision. Therefore, this claim has been resolved and is no longer on appeal before the Board. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (holding that where an appealed claim for service connection is granted during the pendency of the appeal, a second Notice of Disagreement (NOD) must thereafter be timely filed to initiate appellate review of the claim concerning "downstream" issues, such as the compensation level assigned for the disability and the effective date).

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record, as well as his Virtual VA paperless claims file.


FINDINGS OF FACT

1. The Veteran did not clearly and unmistakably enter service with a pre-existing left ankle disorder.

2. The Veteran's current left ankle disorder is not shown to be causally or etiologically related to any injury, illness, or incident during service.

3. The Veteran's current left wrist disorder is not shown to be causally or etiologically related to any injury, illness, or incident during service.

4. The evidence of record contains medical guidance explaining that the sign or symptom described by the Veteran as memory loss is, as shown by psychological examination, including neuropsychological testing, related to the known clinical diagnosis of service-connected PTSD.


CONCLUSIONS OF LAW

1. The criteria for establishing service connection for a left ankle disorder have not been met. 38 U.S.C.A. §§ 1110, 1111, 1112, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2015).

2. The criteria for establishing service connection for a left wrist disorder have not been met. 38 U.S.C.A. §§ 1110, 1112, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2015).
3. The criteria for establishing separate service connection for a chronic disability manifested by memory loss have not been met. 38 U.S.C.A. §§ 1110, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).

I. Duties to Notify and Assist

As set forth in the Veterans Claims Assistance Act of 2000 (VCAA), the Department of Veterans Affairs (VA) has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2014). Under the VCAA, when VA receives a claim, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim; that VA will seek to provide; and that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

The notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

Standard letters from February and March 2010 satisfied the duty to notify provisions. These letters fully addressed the notice requirements in their entirety, and were sent to the Veteran prior to the initial adjudication in July 2010. The letters informed the Veteran of what evidence was required to substantiate his claims, and of his and the VA's respective duties for obtaining evidence. The Veteran presents no allegation that he has any evidence in his possession, which is needed for full and fair adjudication of this appeal. The Board finds that the notification requirements of the VCAA have been satisfied as to timing and content.

To fulfill Dingess requirements, in February and March 2010, VA provided the Veteran with notice as to what type of information and evidence was needed to establish a disability rating and the possible effective date of the benefits. VA successfully completed the notice requirements with respect to the issues on appeal. Therefore, adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b).

VA has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c).

The service treatment records have been obtained. Post-service VA and private treatment records and reports have also been obtained. The Veteran has not identified any additional existing evidence that is not of record that is necessary for a fair adjudication of his appeal. The Veteran was provided VA medical examinations for his claims in April 2015. The VA examination reports are adequate because they are based upon consideration of the relevant facts particular to this Veteran's medical history, describe the disabilities in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303-04 (2008). Thus, VA's duty to assist has been met.

Furthermore, the Veteran was afforded a Board hearing March 2014. A Board member has two duties at a hearing: (1) a duty to fully explain the issues still outstanding that are relevant and material to substantiating the claim; and, (2) a duty to suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record. See 38 C.F.R. § 3.103(c)(2) (2014); Procopio v. Shinseki, 26 Vet. App. 76 (2012) (citing Bryant v. Shinseki, 23 Vet. App. 488, 492, 496 (2010)).

Here, during the hearing, the VLJ specifically noted the issues on appeal. See Board hearing transcript, p. 2. The Veteran was assisted at the hearing by an accredited representative from the Veterans of Foreign Wars. Id. The VLJ noted the purpose of the hearing and stated the reasons for the forthcoming inquiries ("the RO denied your claim because they did not find...any of these disabilities were related to something that happened in service."). Id. at 3. The representative and the VLJ then asked questions to ascertain whether the Veteran had submitted evidence in support of this claim. Id. In addition, the VLJ and the representative sought to identify any pertinent evidence not currently associated with the claims folder that might have been overlooked or was outstanding that might substantiate the claim. Id. Moreover, neither the Veteran nor his representative has asserted that VA failed to comply with the hearing requirements, nor identified any prejudice in the conduct of the Board hearing. Id. By contrast, the hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim for benefits. As such, the Board finds that the VLJ complied with the aforementioned hearing duties, and that any error in notice provided during the Veteran's hearing constitutes harmless error.

The Board is also satisfied as to substantial compliance with its January 2015 remand directives. In January 2015, the Board remanded this matter to the AOJ in order to afford the Veteran examinations for his injuries, and for Social Security Administration (SSA) records, should they exist. The Board is satisfied that there has been substantial compliance with the prior remand, as the Veteran was examined in April 2015, and the SSA provided a negative response to the RO's records inquiry. See Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (indicating that a Court or Board remand confers upon the Veteran the right to substantial, but not strict, compliance with that order).

II. Service Connection

Applicable Laws

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Hickson v. West, 12 Vet. App. 247, 253 (1999).

If the condition noted during service (or in the presumptive period) is not shown to be chronic or where the diagnosis of chronicity may be legitimately questioned, then generally a showing of continuity of symptomatology after discharge is required to support the claim. 38 C.F.R. § 3.303(b).

Certain chronic diseases, such as arthritis, which are manifested to a compensable degree within one year of discharge from active duty, shall be presumed to have been incurred in service, even though there is no evidence of such a disease during service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), the Federal Circuit recently limited the applicability of the theory of continuity of symptomatology in service connection claims to those disabilities explicitly recognized as "chronic diseases" in 38 C.F.R. § 3.309(a).

It is important to note that a Veteran is presumed in sound condition except for defects noted when examined and accepted for service. Clear and unmistakable evidence that the disability existed prior to service, and was not aggravated by service, will rebut the presumption of soundness. 38 U.S.C.A. § 1111 (West 2014). A preexisting disease will be considered to have been aggravated by active service where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153 (West 2014); 38 C.F.R. § 3.306 (2015).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To do so, the Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence that it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. See Masors v. Derwinski, 2 Vet. App. 181 (1992). 

Left Ankle

The Veteran is seeking service connection for a left ankle disorder. He asserts that he injured his ankle "jumping out of a helicopter around 1970 in Japan." See November 2009 VA Form 21-4138; see also March 2014 Board hearing transcript. 




Facts

Available service treatment records reflect that the Veteran reported a history of "swollen or painful joints" prior to entering service, and that a football injury necessitated the "fix" of his "ankle." See July 1969 Report of Medical History. No ankle disorder was identified on the following entrance examination. See July 1969 Report of Medical Examination. The Veteran's STRs do not indicate treatment for the left ankle. On his 1971 discharge examination, the Veteran indicated that he had experienced "swollen or painful joints." See August 1971 Report of Medical History. Thereafter, the discharge examiner noted that "Physical athletics seems to attribute to swelling of left ankle." Id. 

Post-service VA treatment records reflect the Veteran's contention that he first began seeking treatment for pain in his left lower extremity in 2009. See January 2010 VA Form 21-526 ("Residuals left ankle injury...from approx 11/2009"); see also July 2009 VAMC Mental Health Initial Evaluation Note ("Injuries: Left ankle, jumping out helicopter, bad sprain, no treatment."). Specifically, VA records demonstrate that the Veteran sought help for an "aching, dull" pain in his "lt foot" in September 2009. See September 2009 VAMC Mental Health Physician Note. Thereafter, the medical treatment records do not note any ongoing pain management or care associated with the Veteran's left ankle.

The Veteran underwent a VA examination in April 2015. See April 2015 VA examination. Following a review of the Veteran's file and an in-person examination, the Veteran was diagnosed with degenerative arthritis of the left ankle. Id. The Veteran reported that he injured his left ankle after jumping out of a helicopter in-service, receiving only an "ace-wrap" for treatment at the time and suffering "pain through the years." Id. The examiner noted that the Veteran self-medicated the injury with Tylenol and soaking regiments. Id. It was also noted that the Veteran was previously employed in bakery machine maintenance, then for his own HVAC company for 30 years, and that he had suffered tractor and dirt bike related accidents in 2007. Id. Thereafter, the examiner opined that "it would be purely speculation" to identify which "ankle" was noted as injured prior to service, but that if it was the left ankle then it was "clearly and unmistakably...not aggravated beyond its natural progression." Id. Regarding direct service connection, the examiner opined that the Veteran's current left ankle disorder "was not incurred or caused by the claimed in service injury or event." Id. Specifically, the examiner noted that the Veteran's August 1971 discharge examination demonstrated normal lower extremities with "physical athletics attribute swelling." Id. The examiner also noted that service treatment records did not demonstrate that the Veteran was treated for this condition during service or that this had been a chronic condition throughout the years, in light of the Veteran's history of "operat[ing] heavy equipment...such as endloader...dirt bike" that necessitates "weight bearing of ankles/feet and possibly shifting gears." Id. In support of her rationale, the examiner noted that the Veteran's exam was "unremarkable," demonstrating only "minimal to mild degenerative changes." Id. In conclusion, the VA examiner reviewed medical literature, stating that due to natural aging, arthritis "can be seen in wear and tear joints that require repetitive movements." Id.

Analysis

Presumption of Soundness

When no pre-existing condition is noted upon entry into service, the Veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the Veteran's disability was both pre-existing and not aggravated by service. See VAOPGCPREC 3-03. Clear and unmistakable evidence means that the evidence "cannot be misinterpreted and misunderstood i.e. it is undebatable." Quirin v. Shinseki, 22 Vet App 390, 396 (2009). The standard of clear and unmistakable evidence is an onerous standard. Laposky v. Brown, 4 Vet App 331, 334 (1993). The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the" pre-existing condition. 38 U.S.C. § 1153. If this burden is met, then the Veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under 38 U.S.C.A. § 1111, the Veteran's claim is one for service incurrence.

As noted above, on the July 1969 Self Report of Medical History, the Veteran indicated a history of "swollen or painful joints," and further noted that he had to have an unspecified ankle repaired due to a sports-related injury. However, the July 1969 VA entrance examination is silent as to any left ankle condition or related disorder. Whether or not it was the Veteran's left ankle that was noted as suffering pre-service damage on the 1969 self-report was posited to the April 2015 VA examiner who concluded that "it would be purely speculation to say which side was affected due to the site not specified." 

In balancing the evidence of the Veteran's alleged pre-existing left ankle trauma, it does not rise to a level of clear and unmistakable evidence, and VA is unable to rebut the presumption of soundness. See Gahman v. West, 13 Vet. App. 148, 150 (1999) (recorded history provided by a lay witness does not constitute competent medical evidence sufficient to overcome the presumption of soundness, even when such is recorded by medical examiners). As the Veteran's entrance examination does not explicitly identify which ankle was in-fact damaged prior to entering service, the entrance documentation does not create an undebatable position as to the pre-existence of the Veteran's left ankle condition. As the government failed to rebut the presumption of soundness under 38 U.S.C.A. § 1111, the Veteran's claim now turns on whether the Veteran's left ankle disorder was incurred in service.

Direct Connection

The evidence of record demonstrates a current diagnosis of left ankle degenerative arthritis. See April 2015 VA examination. As such, the first element of service connection under Shedden, a current disability, has been met. 

With regard to the second element under Shedden, the Board finds that it too has been met. Specifically, the Veteran asserts that he injured his left ankle during service by way of an awkward fall from a medical helicopter. See Board hearing transcript, p. 11. His military occupation specialty (MOS) is listed as a medical records specialist, and service personnel records demonstrate that the Veteran was stationed at the 249th General Hospital in Japan. Thus, the processing of the injured and dead, including assisting with their removal from transport vehicles, would be consistent with the circumstances and conditions of the Veteran's duties in service at the 249th General Hospital. 38 U.S.C.A. § 1154(a) (West 2014). As such, the Board concedes that the Veteran suffered an in-service injury and thus, the second element of service connection is met.

Lastly, the record must exhibit evidence of a nexus between the claimed in-service injury and the current disorder. It is not in dispute that the Veteran now has a current diagnosis of left ankle degenerative arthritis, as such is shown by the April 2015 VA examination. Further, based on his MOS, it may reasonably be conceded that he was exposed to helicopter jumping at some point in service. What remains necessary to substantiate his claim is competent evidence of a nexus between the current left ankle disorder and the in-service trauma. 

There is no persuasive evidence that a left ankle disorder was manifested to a compensable degree in the first post-service year. There is no medical evidence that the Veteran had arthritis within the first year of his separation from service, and the Veteran has not contended that he had arthritis to a compensable degree within the first year of his separation from service. The earliest post-service record of a relatable issue is a November 2009 treatment record for pain in his left lower extremity. Moreover, the April 2015 examiner noted that the Veteran reported a history of lower-extremity "weight bearing" activities like tractor and dirt bike operation were not indicative of an ongoing condition. Consequently, service connection for a left ankle disorder on a presumptive basis (as a chronic disease under 38 U.S.C.A. § 1112) is not warranted. 

The analysis turns to whether the Veteran's current diagnosis may somehow otherwise be related to the Veteran's service. The medical evidence that specifically addresses this question consists of the opinion offered in the April 2015 VA examination, when the examiner found that the evidence did not demonstrate that the Veteran's current diagnosis was "incurred or caused by the claimed in-service injury or event." 

The Veteran's lay statements in support of his claim have been considered. The Board notes that the Veteran is competent to comment on any symptoms, such as pain. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, the Board finds that while the Veteran clearly believes that he has a left ankle disorder as a result of his time in service, as a layperson without any medical training and expertise, he is not qualified to render a medical opinion regarding the etiology of his current diagnosis, which the Board notes is a complex medical question because the claimed disorder has multiple potential etiologies thereby necessitating expert testimony to establish causation. 

The Board does not dispute the fact that the Veteran has a current diagnosis of degenerative arthritis of the left ankle, or that the Veteran experienced left ankle pain while in-service. However, the Board finds the April 2015 VA examination to be the most probative evidence of record regarding the etiology of the Veteran's left ankle disorder. Importantly, in finding that a nexus to an in-service incident, event, or occurrence in the military was not substantiated, the VA examiner identified the Veteran's arthritis as reflective of the natural progression of aging and the "wear and tear" of repetitive movements of joints. Thus, the examiner provided a logical rationale for why a favorable nexus opinion could not be given: the findings are consistent with the natural progression of age. Although the Veteran credibly believes that he has had problems with his ankle ever since service, this lay evidence of continuity of symptomatology is outweighed by science-that is, the current pathology associated with the ankle is inconsistent with the claimed in-service injury. The examiner considered the Veteran's contentions including his assertion that he suffered "pain through the years," but ultimately concluded that the Veteran's current disorder is unrelated to service. 

In summary, the most probative evidence is against the Veteran's claim for service connection on either a presumptive or direct basis. See 38 C.F.R. §§ 3.303, 3.307(a)(3), and 3.309(a). To the contrary, the VA examiner has opined that the Veteran's left ankle degeneration is likely related to his aging, as evidenced by a review of medical literature. As the preponderance of the evidence is against his claim, the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Accordingly, the appeal is denied.


Left Wrist

The Veteran is seeking service connection for a left wrist disorder. He asserts that he was injured during a "pugil sticks" combat exercise "in basic training." See March 2014 Board hearing transcript; see also November 2009 VA Form 21-4138 ("left wrist injury incurred around 1969 Ft. Gordon, GA"). 

Facts

As noted above, the Veteran's 1969 self-report of medical history indicates that he had experienced "swollen or painful joints" prior to entering service, but no wrist or related disorder was identified on the following entrance examination. See July 1969 Report of Medical Examination. Service treatment records contain a single report of the Veteran seeking treatment for his left hand, stemming from an injury "playing ball." See May 1971 Chronological Record of Medical Care. The treating physician noted that the Veteran's x-rays were negative, and that he had "good ROM," "mild pain," and "mild swelling." Id. On his 1971 discharge examination, the Veteran again indicated that he had experienced "swollen or painful joints" while in service, but the following discharge examination does not contain any reference to any issues regarding his left hand/wrist. See August 1971 Report of Medical History; see also August 1971 Report of Medical Examination. 

Post-service VA treatment records reflect that the Veteran first began seeking treatment for pain in his left arm and wrist in 2005. See July 2005 VAMC Orthopedic Surgery Consult. The Veteran reported discomfort associated with activity and a history of pain that had worsened "in the past year," stemming from a "rather significant injury to his left wrist while in the Army in 1969." Id. The Veteran underwent x-rays for his wrist and he was diagnosed with chronic lunate extensor subluxation and degenerative osteoarthrosis. Id. Thereafter, treatment records demonstrate that the Veteran was involved in a motorcycle accident and underwent new x-rays of the left arm which demonstrated an acute radial syloid fracture in the left distal radius, as well as "old" degenerative changes in the left wrist, "secondary to old trauma." See January 2007 VAMC Orthopedic Surgery Consult. Later, in September 2007, the Veteran sought treatment for "left hand numbness and tingling" resulting from a tractor tipping incident. See March 2008 VAMC Speech Pathology Consult; see also December 2007 VAMC Addendum ("sensation to light touch decreased in left arm in ulnar ...Impression:...left ulnar mononeuropathy.")

The Veteran underwent a VA examination in April 2015. See April 2015 VA examination. Following a review of the Veteran's file and an in-person examination, the Veteran was diagnosed with degenerative arthritis of the left wrist. Id. The Veteran reported that while in service he "tried to avoid weigh[t] bearing on left wrist such as push-ups" after his "wrist was struck by stick [and] had immediate swelling & pain," and was wrapped afterwards. Id. The examiner noted that the Veteran self-medicated the "constant pain" with Tylenol and that he "did not seek care after leaving service." Id. It was also noted that the Veteran was previously employed as a repairmen for a bakery, then for his own HVAC company, but that these occupations "did not require[] any lifting." Id. The Veteran also reported that he had suffered tractor and dirt bike accidents in 2007, from which he "reinjured [his] wrist." Id. The report reflects that the examiner reviewed the January and February 2007 medical findings. Reduction in muscle strength was observed, but the examiner opined that it was unrelated to the claimed condition because it was "probable multifactorial history carpal tunnel syndrome and prior polytrauma injuries unrelated to service." Id. Thereafter, the examiner opined that the Veteran's current left wrist disorder "was less likely than not" incurred or caused by the claimed in service injury, illness or event. Id. Specifically, the examiner noted that the Veteran's August 1971 discharge examination demonstrated normal upper extremities. Id. The examiner also identified that the Veteran received in-service medical care in May 1971 for "mild swelling with a good range of motion with mild pain" for his left wrist. Id. As the May 1971 x-rays were negative and the diagnosis was of a contusion, the examiner identified that this was "a tissue injury not bone." Id. The examiner also identified the June 2005 x-ray diagnostic impressions of "chronic lunate extensor subluxation and degenerative osteoarthritis." Id. Regarding these results, the examiner consulted medical literature and opined that "it would not be uncommon to see arthritis caused by wear and tear" due to the Veteran's hand and wrist exerting occupation and hobbies such as heavy equipment maintenance, endloader operation, and gardening. Id. The examiner opined that the record did not support any chronic nature of this condition following service, thus the "initial injury was a self-limiting condition." Id. In support of her rationale, the examiner noted the Veteran's "30 years in maintenance and gardening" and his history of "operat[ing] heavy equipment...such as endloader...dirt" that necessitates "use of left wrist and hands." Id. In conclusion, the examiner opined that the current condition of the Veteran's wrist was "likely the result of past occupations, and hobbies" and less likely than not caused by the claimed in-service event. Id.

Analysis

The evidence of record demonstrates a current diagnosis of left wrist degenerative arthritis. See February 2015 VA examination. As such, the first element of service connection under Shedden, a current disability, has been met. 

Next, under Shedden, the Veteran must have endured an in-service injury or event. In the instant case, service records were reviewed. The Veteran's treatment records indicate he suffered an in-service injury to his left wrist in May 1971. See May 1971 Chronological Record of Medical Care. At the time, an impression of "mild pain... swelling" was noted. As such, the Board concedes that the Veteran suffered an in-service injury and thus, the second element of service connection is met.

Lastly, the record must exhibit evidence of a nexus between the claimed in-service injury and the current disorder. It is not in dispute that the Veteran now has a current diagnosis of left wrist degenerative arthritis, as such is shown by the April 2015 VA examination. Further, service treatment records demonstrate that the Veteran suffered left wrist pain and swelling while on active duty. What remains necessary to substantiate his claim is competent evidence of a nexus between the current left wrist disorder and the in-service trauma. 

There is no persuasive evidence that a left wrist disorder was manifested to a compensable degree in the first post-service year. There is no medical evidence that the Veteran had arthritis within the first year of his separation from service, and the Veteran has not contended that he had arthritis to a compensable degree within the first year of his separation from service. The earliest post-service record of a relatable issue is a June 2005 treatment record for pain in his left arm. Moreover, the April 2015 examiner noted that the Veteran's reported history of wrist and hand centric activities like gardening and dirt bike operation were not indicative of an ongoing condition. Consequently, service connection for a left wrist disorder on a presumptive basis (as a chronic disease under 38 U.S.C.A. § 1112) is not warranted. 

The analysis turns to whether the Veteran's current diagnosis may somehow otherwise be related to the Veteran's service. The medical evidence that specifically addresses this question consists of the opinion offered in the April 2015 VA examination, when the examiner found that the evidence did not demonstrate that the Veteran's current diagnosis was not "incurred or caused by the claimed in-service injury or event." 

The Veteran's lay statements in support of his claim have been considered. The Board notes that the Veteran is competent to comment on any symptoms, such as pain. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). However, the Board finds that while the Veteran clearly believes that he has a left wrist disorder as a result of his time in service, as a layperson without any medical training and expertise, he is not qualified to render a medical opinion regarding the etiology of his current diagnosis, which the Board notes is a complex medical question because the claimed disorder has multiple potential etiologies thereby necessitating expert testimony to establish causation. 

The Board does not dispute the fact that the Veteran has a current diagnosis of degenerative arthritis of the left wrist, or that the Veteran experienced left wrist pain while in-service. However, the Board finds the April 2015 VA examination to be the most probative evidence of record regarding the etiology of the Veteran's left ankle disorder. Importantly, in finding that a nexus to an in-service incident, event, or occurrence in the military was not substantiated, the VA examiner identified the Veteran's arthritis as reflective of the natural progression of aging and the "wear and tear" of repetitive movements of joints. Moreover, the examiner identified that the Veteran's documented in-service injury was indicative of a self-limiting tissue injury, not of a bone-related problem. Thus, the examiner provided a logical rationale for why a favorable nexus opinion could not be given: the findings are consistent with the natural progression of age and are most likely a function of the Veteran's 30-year occupation in heavy machine maintenance and his hobbies. Although the Veteran credibly believes that he has had problems with his wrist ever since service, this lay evidence of continuity of symptomatology is outweighed by science-that is, the current pathology associated with the wrist is inconsistent with the in-service injury. 

In summary, the most probative evidence is against the Veteran's claim for service connection on either a presumptive or direct basis. See 38 C.F.R. §§ 3.303, 3.307(a)(3), and 3.309(a). To the contrary, the VA examiner has opined that the Veteran's left wrist degeneration is likely related to his occupation and hobbies, as evidenced by a review of medical literature. As the preponderance of the evidence is against his claim, the doctrine of reasonable doubt is not for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. Accordingly, the appeal is denied.

Memory Loss

Facts & Analysis

The Veteran contends that he suffers from memory loss and the record shows that he complained of memory deficits in connection with his post-service 2007 tractor accident. See July 2009 VAMC SATP Consult ("tractor accident...he reports continued difficulty with memory.") However, as will be explained below, the record evidence reflects that memory loss is a symptom of the Veteran's service-connected psychiatric disorder.

The Veteran's service treatment records show no treatment for or a diagnosis of a disorder manifested by memory loss. Likewise, post-service treatment records fail to reflect that the Veteran has ever been independently diagnosed with memory loss. VAMC records do indicate that the Veteran was treated for post-service memory problems, but these memory issues are consistently discussed only within the context of the Veteran's 2007 traumatic brain injury ("memory and concentration difficulties since the accident"), or regarding mental health, ("suspect that the pt.'s memory deficits are increased, in part, due to high level of stress and anxiety.") See March 2008 VAMC Speech Pathology Consult.

The Veteran was afforded a mental health VA examination in April 2015. See April 2015 VA examination. The examiner indicated that a symptom of "mild memory loss, such as forgetting names, directions or recent events" was associated with the Veteran's psychiatric diagnoses of PTSD and depression, NOS. Id. Regarding his memory, the examiner observed that it was "intact" and objective cognitive testing placed the Veteran within the "normal range of cognitive functioning." Id. The examiner further observed that the Veteran came alone to the appointment, drove himself, and appeared "to be a good historian." Id. In light of these facts, and that the Veteran's "MMSE (mini-mental state examination) showed normal cognition," the examiner "rul[ed] out a formal cognitive or memory disorder." Id. The examiner concluded that the Veteran's memory loss "is at least as likely as not" aggravated by the Veteran's psychiatric disorders because "PTSD/Depression/Anxiety...can negatively affect short term memory secondary to stress related concentration problems." Id.

The Veteran was not diagnosed as having a memory disorder during the pendency of the appeal, but there have been objective findings of memory loss documented in the Veteran's VAMC records. However, as the April 2015 VA examiner identified that the Veteran's symptoms of memory loss were attributed to his known clinical diagnosis of PTSD, and that he was not suffering from any "formal cognitive or memory disorder," separate service connection for memory problems is not warranted. There was no diagnosis of an independent memory disorder within the record, and service connection for PTSD has already been granted. Accordingly, separate service connection for a chronic disability manifested by memory loss is not warranted. 


ORDER

Entitlement to service connection for a left ankle disorder is denied.

Entitlement to service connection for a left wrist disorder is denied

Entitlement to separate service connection for a chronic disability manifested by memory loss is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs